## Florence Pfefferle et al.

*v.*

## Charles F. Herr, executor and trustee of John F. Pfefferle, deceased.

[Decided January 14th, 1909.]

1. That an executor and trustee paid to the children of testator sums in excess of the income of the estate, while the will directed that none of the estate should be paid to them before they attained a certain age, and that until that time they should have so much of the income as might be necessary for their maintenance and education, does not justify his removal from office on the application of the children, in the absence of bad faith and a wanton and wasteful invasion of the *corpus* of the estate for their maintenance and education.

2. *2 Gen. Stat. p. 1616 § 3*, authorizing the orphans court to order a guardian to sell so much of the ward's lands as may be adequate for his maintenance and education, applies to testamentary as well as statutory guardians.

3. A testamentary trustee may in a proper case apply for and obtain the protection of an order of the court to make an encroachment on the ·*corpus* of the estate in behalf of his ward, and what may be done in advance may be subsequently ratified.

4. A testator giving his real and personal estate to his children equally, subject to the right of dower of his wife, and directing his executor to sell such parts of the personalty as may be necessary to discharge encumbrances on the real estate, expresses a clear intention to pass the real estate to the devisees unencumbered and to endow the widow in the same value therein as that value has in the hands of the devisees.

5. That an executor and trustee sold his testator's real estate and made excessive payments to the widow on account of her dower without having her dower interest ascertained according to law, and that a bill filed by the widow, pending proceedings for the removal of the executor and trustee, has not been prosecuted with due diligence, do not justify the removal of the executor and trustee, at least until it has been definitely ascertained what the fact is as to such excessive payments and delay.

6. That an executor and trustee allowed taxes on the testator's real estate to become defaulted so that penalties and interest were added to them, and so that a part of the land was sold for taxes, does not justify his removal from office on it appearing that the property has been

redeemed and he has been surcharged with all penalties and interest paid to effect the redemption.

7. *P. L. 1898 p. 767 § 140*, which provides that, when property in the hands of any executor or trustee is insecure or in danger of being wasted, he may be required to give bond conditioned for the faithful perform-ance of his duty under testator's will, is a declaration of legislative pol-icy indicating that it is not for every unwarranted act of omission or commission that an executor is to be removed, and where he has strayed from the path of fiduciary duty he may be compelled to secure those who might suffer loss by reason of his dereliction, but the stigma of removal can be placed on him only in a flagrant case.

. 8. Where an executor and trustee, who had made excessive payments to testator's widow on account of her dower, and had thereby made the estate insecure, gave a bond as required by the court, conditioned on his faithful performance of his duty under the will, and thereby secured the estate, his misconduct was not ground for his removal.

---

On appeal from an order of the Essex county orphans court refusing to remove the respondent from his office of executor and trustee.

*Mr. Samuel A. Besson* and *Mr. Joseph M. Roseberry*, for the appellants.

*Messrs. Pitney, Hardin & Skinner*, for the respondent.

WALKER, VICE-ORDINARY.

John F. Pfefferle died January 1st, 1892, leaving him surviv-ing his widow, Margaret E. Pfefferle, who was his second wife and who has since married, and whose name is now Margaret E. McClellan, and his three children, Florence, Gertrude and Frederick, by his first wife, and two children, Ida and Oscar, by his second wife. At the time of his death Florence was twelve years old, Gertrude, nine; Frederick, seven; Oscar, two, and Ida, three months. Mr. Pfefferle left a last will and testament dated November 11th, 1891, which was proved before the surro-gate of Essex county, January 25th, 1892. Mr. Herr was made executor and he and the testator's wife were appointed guard-ians of his children during their minority. Mr. Herr qualified as executor and took upon himself the burden of the administra-tion of the estate upon letters testamentary being issued to him

on the date of the probate of the will. Neither he nor Mrs. McClellan qualified as testamentary guardians of the infant children of the deceased, but Mrs. McClellan in 1903 was appointed guardian of her two infant children by the Essex county orphans court.

The testator in his will devised and bequeathed all his real and personal estate unto such of his children as should be living at the time of his death, in equal shares, subject to the right of dower of his wife in the real estate, and directed his executor to sell so much and such parts of his personal estate as might seem necessary to pay and discharge all encumbrances on his real estate, it being his will and he did order that none of his real or personal estate should be conveyed or paid over to his children before they attained the age of thirty years, respectively, they, however, to have so much of the income and profit thereof as might be necessary for their maintenance and education during their minority and for their support until they attain said age.

The appellants in their petition to the orphans court alleged that the executor and trustee had wasted and misapplied the estate committed to his custody and had abused the trust and confidence reposed in him by the testator; that up to September, 1901, he had paid to the widow $9,215.42 of the principal of the estate in violation of the provisions of the will; that he had so paid out of the principal to Florence the sum of $5,199.49; to Gertrude, $3,732.41; to Frederick, $1,661.33; to Ida, $1,012.84, and to Oscar, $829.97, in all $21,650.56.

It will be noticed that the petitioners are Florence, Gertrude and Frederick, who were recipients of the respondent's disbursements out of their father's estate. The fact is that the respondent, from the death of the testator until the filing of his second account as executor, provided the petitioners and other children of the decedent with means for their support and education as seemed to him justified; but because of exceptions filed to that account, questioning among other expenditures those made for the support and education of the petitioners, and complaining that the respondent should not have allowed more moneys from the estate to be expended for the petitioners than the share of the

net income belonging to them, the respondent, for his own protection, ceased making allowances to the petitioners.

In this posture of affairs the appellants filed a bill of complaint in the court of chancery praying in the alternative, among other things, that the respondent as executor be decreed to pay to each of the complainants out of the income to which they are entitled under the will of their father, the sum of $40 per month for their maintenance and support, or that he be ordered and decreed to provide in some other way for the necessary education, support and maintenance of the complainants. The defendants to this bill were Mr. Herr, the executor, Mrs. McClellan, the widow, and her infant children, Ida and Oscar Pfefferle.

The executor answered and a decree *pro confesso* passed against Mrs. McClellan. The clerk in chancery was appointed guardian of her infant children, and filed answers on their behalf through counsel appointed for that purpose. After hearing and on February 26th, 1906, a final decree was made in the cause (no opinion being filed), which ordered and adjudged that the real estate whereof the testator died seized, together with the personal estate remaining in the hands of the respondent as executor, after administering upon said estate, are held by him in trust for the complainants and the defendants, Ida and Oscar Pfefferle, to keep the same and to apply the equal undivided one-fifth part of the net income and profit, or so much thereof as in his judgment may be necessary for the maintenance and education of each of said children who have not reached the age of twenty-one years, and for the maintenance of each who have reached that age until they shall attain the age of thirty years, and to pay to each his or her equal undivided one-fifth part of the principal of said estate, together with any accumulated income, as and when he or she shall attain said age, and upon the further trusts declared in said will, subject, however, to the right of dower of the widow; and that the trustee apply an equal one-fifth part of the net income and profits of the estate or so much thereof as in his judgment may be necessary for the maintenance and education of each of the children who have not reached the age of twenty-one years, and for the maintenance of each of them

who has reached that age until he or she shall reach the age of thirty years respectively.

The question of the amount of allowance out of the estate to the children of the decedent was a question of doubt and difficulty at least, for, on a prior bill filed which was demurred to for want of parties, Vice-Chancellor Stevenson, in his opinion (*Pfefferle* v. *Herr, 65 N. J. Eq. (20 Dick.) 325* (at *p. 327*), said: "Whether the right of each child to maintenance, &c., applies only to the income of his share or to the income of the entire estate, is the question of construction to be determined at the start. The will says 'that so much of the income and profit thereof'—*i. e.*, of the entire real and personal estate—'as may be necessary' shall be applied to the maintenance and education of the children. The will does not say that so much of the income of each share as may be necessary shall be applied to the maintenance and education of the child entitled to the share."

The objection, as I understand it, is that the executor and trustee paid to the children of the testator sums of money in excess of the income of the estate; but there is no allegation that any of these sums was paid for anything other than maintenance and education.

Assuming that portions of the allowances made for the support and education of the infants were advanced out of the principal of the estate upon the sale of certain portions of the realty, the executor may settle that score with the infants when they are entitled to their shares in severalty upon attaining the prescribed age, especially in view of the fact that the trustee has given security.

By statute (*Gen. Stat. p. 1616 § 3*) the orphans court may order a guardian to sell so much of the ward's lands as may be adequate for his maintenance and education. And this as I understand it applies to testamentary as well as statutory guardians. It was held (*In re Hannah Barry, 61 N. J. Eq. (16 Dick.) 135*) that this court will leave the question of the necessity of expenditure out of the principal of an infant's estate for his maintenance to the judgment of the guardian, subject to the supervision of the orphans court on the settlement of the accounts. In *Stephens* v. *Howard's Executor, 32 N. J. Eq. (5*

*Stew.*) *244,* Vice-Chancellor Van Fleet held that where a legacy vests in an infant, but is payable when it attains a certain age, and its father is unable to support it and the interest arising from the legacies is·not sufficient for that purpose, a court of equity may, in advance of the time fixed for payment by the will, order the principal of the legacy applied to the support of the legatee. These citations are made for the purpose of showing that encroachment upon the principal of the estate of a legatee in advance of the period of distribution, is not absolutely and under all circumstances forbidden. A trustee may, in a proper case, apply for and obtain the protection of an order to make such encroachment in behalf of his ward. And it appears, too, that what may be done in advance may be ratified afterward. In the absence of bad faith and unless there be wanton, excessive and wasteful invasion of the *corpus* of an estate for the maintenance and education of its beneficiary, it would appear that a foundation does not exist for the removal of a trustee upon that score. It may be that the trustee will have to submit to a surcharge in this matter in the end, but for present purposes a showing is not made which calls for the removal of the trustee because of these advances.

When the executor sold real estate he made payments to the widow on account of her dower, without having her dower interest ascertained according to law, and it is claimed that he has paid her excessive amounts.

The testator directed that all the encumbrances on his real estate should be paid out of his personal estate. It would seem from this that the testator intended that his wife should be endowed in the gross value of his real estate, not deducting any encumbrances thereon. In *McLenahan* v. *McLenahan, 18 N. J. Eq. (3 C. E. Gr.) 101,* it was held that if lands are devised subject to a mortgage not made by the decedent the heir or devisee takes *cum onere* unless the decedent shall have assumed the debt in such manner to show his intention to charge his personal estate. And in *Campbell* v. *Campbell, 30 N. J. Eq. (3 Stew.) 415,* on a bill for dower in lands of an intestate, it was held the personal estate must exonerate the land from a mortgage put thereon by the intestate, and dower be assigned there-

from as if unencumbered, and as to a mortgage upon the land assumed by the decedent, dower must be assigned therefrom, subject to the mortgage. The direction in the will for the payment of all encumbrances on the testator's real estate out of his personal property, is, to my mind, the expression of a clear intention to pass the real estate to the devisees unencumbered, and to endow the widow in the same value therein as that value has in the hands of the devisees. *Hetzel* v. *Hetzel* (*October Term, 1908*), not yet reported.

Since this controversy has arisen between certain of the beneficiaries and the executor, the widow has filed a bill for dower in the court of chancery. It is asserted by the appellants that the bill for dower has not been prosecuted with due diligence. Whether this be so or not, in a collateral proceeding like this, the want of diligent prosecution of a suit for dower should not be made the basis of the removal of an executor who is said to have made overpayments on account of dower to the widow; at least until it has been definitely ascertained what is the fact in this regard, the matter should be allowed to remain in *statu quo.* I fail to see that bad faith or gross incompetence is chargeable against the executor in reference to this matter.

It is charged also against the executor that he allowed taxes upon the testator's real estate to become defaulted in and that penalties and interest were added to the amount of the taxes, and that some, at least, of the real estate was sold to the city of Newark. As a matter of fact the lands have been redeemed and the executor in his account in the orphans court was surcharged with all penalties and interest that were paid to effect such redemption. In this respect the estate has not suffered at all. Of course, the executor was very derelict in permitting this thing, but he has atoned for his default.

Because it appeared to the judge of the orphans court, who heard this matter below, that by reason of advances made by the trustee on account of the widow's dower the assets of the estate were to some extent insecure, it was ordered that the executor give a bond to the ordinary in the sum of $10,000, conditioned for the faithful performance of his duty under the will, which bond I understand has been given, and the estate thus secured.

By section 140 of the Orphans Court act (*P. L. 1898 pp. 715, 767*), it is provided that when property in the hands of any executor or trustee is unsafe or insecure or in danger of being wasted, such executor or trustee may be required to give bond to the ordinary conditioned for the faithful performance of his duty under the will of the testator. This declaration of legislative policy clearly enough indicates that it is not for every unwarranted act of omission or commission that an executor is to be removed; only that if he has strayed from the path of fiduciary duty, he may be compelled to secure those who might suffer loss by reason of his dereliction, the stigma of removal to be placed upon him only in a flagrant case.

In *Carpenter* v. *Gray, 32 N. J. Eq.* (*5 Stew.*) *692*, Chancellor Runyon, as ordinary, refused to remove an executor or require him to give security on a petition asking for an accounting as to the investment of a trust fund of $3,000, no bad faith appearing.

The court of errors and appeals held, in *Holcomb* v. *Coryell, 12 N. J. Eq.* (*1 Beas.*) *289*, that a testator has a right to impose confidence in whom he pleases, and if he selects as his representative an irresponsible or insolvent person, in the absence of fraud or misconduct or breach of trust, security cannot be required of such executor, but if the acts or omissions of the trustee be such as to endanger the trust property or to show a want of honesty or a want of proper capacity to execute the duties or a want of reasonable fidelity, equity will remove such trustee. In that case (*Holcomb* v. *Coryell*) it appeared that executors filed an inventory containing five items of assets, one of which was "bonds, notes and books of account, $84,004.15." Upon a bill filed complaining of the inventory and calling upon the executors to account and state the particulars which constituted the assets, instead of availing themselves of the opportunity thus afforded of placing themselves right upon the record, they put in an answer insisting that the inventory and appraisement was all that the law required. It appeared, however, as a fact, that a true inventory and appraisement exhibited one of the executors as a debtor to the estate in the sum of $32,000 and upwards, and the other in the sum of $3,600 and upwards. The executor who owed the larger amount brought in a bill for his services as agent

of the testator amounting to $11,800, and for purchase-money for property of his own which he had conveyed to the executors amounting to $21,500. After full examination it was determined that he was entitled to $1,200 for services, and that he had conveyed property to the estate for the purpose of exhausting the assets in hand, but not of liquidating his indebtedness, and charged exorbitant prices, and in a manner not authorized by law. The chancellor in the court below, upon this state of facts, remarked that he was not disposed to impute moral turpitude to either of the defendants in the discharge of their duties, but there had been such a palpable mistake on their part as to the obligations and duties imposed upon them, such a disregard of the rights of the infant complainant, in the manner in which the suit had been defended, and such ignorance and negligence in the management of the large fund at their disposal, as imperatively demanded of the court to extend to the complainant the protection which was invoked, and to which she was entitled when her property was in jeopardy. Security was required, but the executors were not removed, and the court of errors and appeals affirmed the chancellor.

By section 149 of the Orphans Court act (*P. L. 1898 pp. 715, 770*) it is provided that upon refusal or neglect to do and perform certain enumerated acts, or for embezzlement, waste or misapplication of the estate committed to his custody or for abuse of the trust and confidence reposed in him, an executor or trustee may be removed by the orphans court.

Chancellor Runyon, as ordinary, in *Lett* v. *Emmett, 37 N. J. Eq.* (*10 Stew.*) *535,* held that an executor should be removed because he sought by false representations and by taking advantage of her poverty to induce the residuary legatee to sell her interest in the estate to him for a small price and about one-fourth of its value. Here was no case of mistake or ignorance or carelessness, but a fraudulent act of commission of the most palpable sort, which fully merited the judgment pronounced against the executor.

In *Flinn's Case, 31 N. J. Eq.* (*4 Stew.*) *640,* Chancellor Runyon, as ordinary, held that it was not proof of waste in a proceeding to remove a guardian who was personally responsible,

that he had incurred liability to pay counsel fees in a controversy over his management of the ward's property, since such fees, if unlawful or unnecessary, might be disallowed in his account.

In *Heisler* v. *Sharp, 44 N. J. Eq. (17 Stew.) 167,* it was held in this court that no man is infallible; the wisest make mistakes, but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty. Affirmed for the reasons given by the vice-ordinary. *Heisler* v. *Sharp, 45 N. J. Eq. (18 Stew.) 367.*

There is much to criticise in the conduct of this executor and trustee, but I do not think that a case has been made which requires his removal and the revocation of his letters. The giving of security which was ordered in the court below was, I think, all that was required.

The order appealed from will be affirmed.