IN RE ESTATE OF CHARLES R. CLARK.

C. F. DICKSON, Administrator, Appellee, v. AMERICAN SURETY COMPANY, Appellant.

EXECUTORS AND ADMINISTRATORS: Collection and Management—
1 Inconsistent Attitude. One who is administrator of different estates should not be permitted to appear in the dual and inconsistent capacity as administrator of both estates in a matter wherein the interests of the separate estates are absolutely hostile.

**EXECUTORS AND ADMINISTRATORS:** Final Report—Credit for Un-
authorized Expenditures. An executor who is sole *testamentary* dev-
isee (the widow having ultimately elected to claim her statutory dis-
tributive share) should be given credit on his final report for proper
sums in good faith paid by him as repairs, taxes, and interest on in-
cumbrances on the real estate of the deceased, in order to protect and
preserve such real estate, *even though such payments were not previ-
ously authorized by the court*; and this is true even though the mort-
gages ultimately absorbed all of said real estate.

**EXECUTORS AND ADMINISTRATORS:** Final Report—Justifiable Re-
fusal to Discharge. The surety on the bond of an executor may not
complain of an order of court which simply refuses a discharge of
the executor and his bond because of the possession by the executor
of a sum of money received by him for one who is not a party to
the proceeding.

Headnote 1: 24 C. J. p. 934.   Headnote 2: 24 C. J. pp. 91, 96, 110, 111.
Headnote 3: 23 C. J. p. 1092.

*Appeal from Poweshiek District Court.*—H. F. WAGNER, Judge.

MARCH 8, 1927.

In the district court this was a proceeding in probate, and
directly or indirectly involved the administration of two estates.
A purported final report was made in the estate of Charles R.
Clark by and on behalf of a former executor thereof, since de-
ceased. Objections were filed to such report by the surety of
such former executor. From the final order of the court upon
such objections such surety has appealed. The administrator
of such former executor has also appealed.—*Affirmed in part;
reversed in part.*

*Frank Bechly* and *Reed & Reed*, for appellant.

*Lewis & Dickson*, for appellee.

EVANS, C. J.—This case has been greatly complicated by a
procedure which should have been corrected in the court below.
Prior to January 4, 1921, Charles R. Clark died testate, leaving

1. EXECUTORS AND
ADMINISTRA-
TORS: collec-
tion and
management:
inconsistent at-
titude.

surviving him his widow and an only child, Charles W. Clark. These were the sole beneficiaries of his will, subject to the payment of debts. On the date named, Charles W. Clark was appointed executor without bond. In August of the same year, he voluntarily gave bond, and the American Surety Company, appellant herein, was his surety thereon. He acted as executor of his father's estate until May, 1922, at which time he resigned. In the meantime the widow had filed her election to take under the statute in lieu of the provisions of the will. Upon the resignation of Charles W. Clark, Dickson, the appellee, was appointed administrator *de bonis non* with will annexed of the estate of Charles R. Clark. In January, 1923, Charles W. Clark died intestate, and Dickson was appointed as his administrator. In the course of its administration, the estate of Charles R. Clark has proved to be deeply insolvent. Whether the estate of Charles W. Clark is likewise insolvent does not affirmatively appear, but such is the only inference to be drawn from the arguments of counsel. A final report in the estate of Charles R. Clark was filed by Dickson, not as administrator *de bonis non* with will annexed, but as the administrator of Charles W. Clark. This final report is manifestly hostile to the interest of the Charles W. Clark estate. It is also manifestly favorable to the Charles R. Clark estate. Its contentions are such as would naturally and properly emanate from the administrator *de bonis non* of the Charles R. Clark estate. It charges that Charles W. Clark, as executor of Charles R. Clark, made unauthorized payments upon purported claims, and that credit for such payment should be denied to him and to his estate; and liability was charged against him accordingly. The appellant, as surety on the bond of Charles W. Clark, appeared, and challenged such final report and filed objections thereto. It first challenged the right of Dickson to appear in the dual and inconsistent capacity as administrator of both estates in a matter where their respective interests were hostile. Clearly, it was to the interest of the Charles R. Clark estate and its administrator to challenge credits and enforce liability against the Charles W. Clark estate; and it was as clearly to the interest of the Charles W. Clark estate and its administrator to justify his acts as executor and to sustain the validity of the payments which he had

made. The objection thus made should have been properly sustained, and the administrator *de bonis non* should not have been permitted to represent the estate of Charles W. Clark in the controversy. What transpired in the course of the trial was that the surety company sought in its own interest to protect the interest of the Charles W. Clark estate (primarily liable before the American Surety Company could become liable); whereas the administrator of Charles W. Clark resisted such efforts with consistent objections throughout the trial. The opening statement in the brief of appellee indicates its attitude, as follows:

"A final report in the estate of Charles R. Clark was filed on behalf of the deceased executor, Charles W. Clark, to which report the American Surety Company filed objections, and trial was had thereon. No other objections were filed."

The first result in the trial below was that this final report, purporting thus to be made by the administrator of Charles W. Clark, the deceased executor, was treated as a verity as against the Charles W. Clark estate, and was given the same force and effect as though Charles W. Clark himself, if living, had made such report himself. The report was such a one as could properly have been made by the administrator *de bonis non* of the Charles R. Clark estate, and it should not have been considered in any other light. It should not have been deemed a verity against the Charles W. Clark estate. If the Charles R. Clark estate had been solvent, none of the questions herein involved could have arisen, Charles W. Clark being the sole beneficiary of such estate. In such a case, the same person could properly have acted as executor of both estates. But in view of the insolvency of the first estate and the charges of irregularity against Charles W. Clark, as its executor, it was not permissible that the same person should both prosecute and defend.

It should be said, however, that, at the time that Dickson became the administrator of the Charles W. Clark estate, there was no reason apparent why he could not properly act as the common administrator of both estates. The adverse interest of the two estates was a development of after events, which thrust the common administrator into an inconsistent position through no fault of his own. His good faith is not to be questioned. His only fault was a failure to perceive the position into which he had been pushed by the exigencies of the two estates.

The situation is one which we cannot correct here, unless we should reverse and remand for the sole purpose of enabling the court below to substitute an administrator for the Charles W. Clark estate other than the adminstrator *de bonis non* of the Charles R. Clark estate. In order to avoid the great delay that would result from such a course, we strain a point to hold the case and to treat the administrator as appearing solely in the interest of the Charles R. Clark estate, and as administrator *de bonis non* thereof. The final report, regarded in that light, cannot be deemed to be *prima facie* binding upon the Charles. W. Clark estate, and we shall look to the proofs only for the determination of liability.

The gist of the controversy turns upon four subjects: taxes, interest on mortgages, repairs on real estate improvements, rents.

It appears that the property of the Charles R. Clark estate consisted largely of real estate, incumbered by mortgages. In order to avoid the foreclosure of such mortgages, it was neces-

2. EXECUTORS AND ADMINISTRA- TORS: final re- port: credit for unauthorized expenditures.

sary to pay the accruing interest thereon as it fell due. It was likewise necessary to pay the taxes thereon, in order to avoid penalties and tax sales. Charles W. Clark, while executor in 1921 and 1922, paid such interest, to the amount of $2,617.50, and paid the accruing taxes, to the amount of $1,460.23. These items were challenged by the administrator, and were accordingly rejected as credits by the trial court. It appeared also that Charles W. Clark, while executor, had collected rents on the real estate, amounting to $1,585.86. This item also was challenged by the administrator, but was allowed by the court. The administrator, on his own appeal, complains of such allowance here.

The argument advanced in support of the holding of the trial court on these items is that Charles W. Clark was the sole heir of his father, and the title of the real estate was cast upon him as such, and that he was acting in his own interest in the paying of such interest and taxes. This argument loses sight of the fact that Charles R. Clark did not die intestate. Charles W. Clark took by testamentary devise, and not by statutory descent. The power of a testator over his real estate is no less plenary than it is over his personal property. Because of the will, title was not cast upon the heir upon the death of the ancestor. The

real estate was a part of the estate, all of which was to be administered by the executor, as such.

It is further argued that Charles W. Clark made such payments without obtaining authority from the court. This fact would not necessarily be an adequate reason for the refusal of the credit. It is not claimed that he acted in violation of the terms of the will; nor is it claimed affirmatively that the court would have refused such authority, if it had been applied for. It is evident from the record that at that time the property was deemed to have substantial value in excess of the amount of the mortgages. After the present administrator was appointed, and in the latter part of the year 1922, the court expressly authorized just such a course, upon the application of this administrator. The ground of the application in such case was that such a course was necessary, in order to save the estate from loss. It appears also that the application filed by the administrator *de bonis non* was substantially in the same form, and put forth the same reasons, as were contained in an application by Charles W. Clark, filed in December, 1921, upon which no formal action by the court appears to have been had. It is clear from the record that, in the light of the circumstances then known, the action of Charles W. Clark, as executor, was provident and proper, and was such as would have been approved by the court if its attention had been directed thereto. Nor did the trial court put its refusal of these credits upon this ground.

It is clear to us, upon this record, that it would be a grave injustice now to refuse these credits, even though it be true that the mortgages in question ultimately absorbed the land, because of persistently shrinking values. These two credits should have been allowed.

As a corollary to our conclusion on the foregoing items, it follows also that Charles W. Clark, as executor, should have been charged with the rents collected, being $1,585.86.

It appears also that Charles W. Clark reasonably expended $214.52 in repairs on buildings upon the real estate. This item was rejected as a credit. In support of the order, it is argued that some of these repairs were made on the homestead, which was subsequently included in the widow's distributive share. This was not an adequate reason for the rejection. Prior to the setting apart of the widow's distributive share, the entire estate

was in the hands of the executor, and he was charged with the responsibility of proper preservation thereof. The estate got the full benefit of such repairs, and the value thereof entered into the computation when subsequently the widow's distributive share was set apart to her. We are of opinion, therefore, that this item should have been allowed as a credit.

One other item of controversy is presented. Charles W. Clark, as executor, collected insurance policies amounting to a total of $3,097.39. For two thirds thereof he was the proper

**8. EXECUTORS AND ADMINISTRATORS: final report: justifiable refusal to discharge.** beneficiary, and the trial court permitted him to retain, as a credit, the sum of $2,064.93. The widow was entitled to take the remaining one third of such insurance,—$1,032.46. The trial court held that Charles W. Clark, as executor, was chargeable with such amount, for the benefit of the widow. Appellant complains of this order. Its argument is that the widow is not a party to the proceeding, and is not complaining, and that the administrator *de bonis non* was not entitled to recover the sum from the former executor, or from his estate. It is true that the administrator *de bonis non* was in no position to demand this item. *Kelley v. Mann,* 56 Iowa 625. It was already in the hands of the collecting executor, and he was chargeable therefor to the proper beneficiary. The order of the court did not allow the administrator *de bonis non* to recover the same. It simply refused to discharge the executor and his bond while such item remained unsettled. If it be true, as suggested by appellant in argument, that the widow is not desirous of pressing the claim, there is nothing in the order of the court which forbids a formal relinquishment thereof. For our present consideration, it is sufficient that the item appears upon the face of the report as one of liability which has not been discharged.

The order of the trial court will be modified to the extent herein indicated, and in all other respects will stand approved.— *Affirmed in part; reversed in part.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.