In the Matter of the Estate of ELIZABETH F. GALLOWAY, Deceased.

Surrogate's Court, Kings County, February 4, 1931.

*Herman Block,* for the petitioner.

*Frederick A. Keck,* special guardian for Helen F. Bochringer, an infant.

WINGATE, S. This court has had frequent occasion to remark upon the too prevalent legal practice of isolating phrases or paragraphs from opinions of the courts and basing arguments thereon without reference to the questions determined in the particular cases or the context from which the excerpts were taken. The danger of this procedure is graphically illustrated by the misconception which has grown up in the minds of certain members of the legal profession regarding the several opinions of this court relating to the allowance of single and double commissions to testamentary fiduciaries.

In consequence of the very evident general misconception on

the subject of the allowable compensation in such cases, this court attempted in *Matter of Abrahams* (136 Misc. 538) and in the later complementary decisions in *Matter of Jackson* (138 id. 167) and *Matter of Rappold* (Id. 163), to collate and analyze the fairly numerous decisions of appellate courts bearing upon the question.

That these decisions were directed merely to an attempted interpretation and clarification of the law on the single subject of the allowance of compensation to testamentary fiduciaries, was made extremely evident by the opening paragraphs in both the *Abrahams* and *Jackson* cases. In the former the court said (at p. 538): " The case at bar presents the perennially controversial question of whether a testamentary representative is entitled to receive double commissions, that is commissions both as executor and as trustee, or whether the terms of the will as construed in the light of the determining decisions on the topic, limit him to a single compensation in his executorial capacity."

In the *Jackson* case the opinion opened with the following statement: " The sole problem is whether, when the same person acts throughout the entire period, from the death of the decedent to the final distribution of all sums in the estate to the ultimate persons entitled in possession by the provisions of the decedent's will, he should be allowed " commissions at double the statutory rate.

In spite of these statements, which on ordinary principles of construction and connotation of the English language, the court feels should have raised no doubt in any mind that any problem was passed upon beyond that of the propriety of payment of double commissions to the testamentary fiduciaries under the terms of the wills then construed, the impression seems to prevail in certain quarters that as a result of the determinations in these cases, this court denies the existence of valid trusts in all cases in which the testamentary directions result in the denial of compensation in a dual capacity, *i. e.*, in the capacity of executor and testamentary trustee, to the individuals to whom the administration of the respective estates is committed.

The court does not intimate that this misconception is shared by either of the learned counsel in the case at bar, since their discussion of the general subject conclusively demonstrates the contrary. It welcomes, however, the opportunity afforded by the facts in the instant proceeding to make a further attempt at clarification of the principles governing this branch of surrogate's law.

As stated in *Matter of Jackson*, the sole purpose of the court in making the analysis of earlier decisions which was attempted in *Matter of Abrahams*, was an effort to deduce the basic principles

governing the question of allowance of commissions in dual capacities as enunciated in the decisions of the higher courts of this State. It did not attempt to make any new law, but merely to collate the law previously declared to exist.

In the last analysis, *Matter of Abrahams* and the companion decisions of this court, as well as the decisions of the higher courts therein reviewed, amount merely to constructions of section 285 of the Surrogate's Court Act, relating to the allowance of commissions. That section provides in substance that commissions at certain rates shall be allowed to certain named fiduciaries, among others, to executors and testamentary trustees. The decisions in this connection, in reality, merely construe that statute and determine in what instances testamentary trustees are to receive a full commission in addition to the full commission necessarily allowable to the same individuals in their capacity as executors.

The result of such construction is to hold that not all persons upon whom duties as testamentary trustees are imposed, are entitled to such double commissions; but, as stated in *Johnson* v. *Lawrence* (95 N. Y. 154, at p. 162): " to entitle the same persons to commissions as executors and as trustees, the will must provide, either by express terms or by fair intendment, for the separation of the two functions and duties, one duty to precede the other and to be performed before the latter is begun, or substantially so performed; and must not provide for the co-existence, continuously and from the beginning, of the two functions and duties."

Stated in another way, this rule amounts merely to a statement that a proper construction of section 285 of the Surrogate's Court Act is to the effect that a testamentary trustee is not entitled to a second commission in addition to the commission which he receives as executor if his duties in a trust capacity are inextricably interwoven with his duties in the executorial function.

Such a determination by no means amounts to a declaration that the fiduciary does not occupy the position of a trustee with all ordinary powers and obligations of such relation. It is merely to the effect that such a testamentary trustee is not in the class of individuals to whom the Legislature has awarded a second payment by reason of the words enacted in section 285 of the Surrogate's Court Act.

It is entirely evident from statements which may be found in practically all of the cases dealing with the right to single and double commissions that, notwithstanding the disallowance of the second compensation, the fiduciary is a true trustee of a genuine and valid trust. A few of these may be worthy of passing note. In *Johnson* v. *Lawrence* (95 N. Y. 154) the court says (at p. 163):

" As a trust duty it sprang into life at the same instant with the executorship, and inextricably blended with it."

In *Matter of Willets* (112 N. Y. 289) the following appears (at p. 296): " We do not think that this is a case where the two functions of executors and trustees co-exist and run from the death of the testator to a final discharge, inseparably blended together."

*Hurlburt* v. *Durant* (88 N. Y. 121) contributes the following (at p. 126): " While it may be conceded that so long as these characters were co-existent, commissions might be retained as executor only, it is otherwise when there has been a separation of duties performed in the two capacities."

*Matter of Ziegler* (218 N. Y. 544) contained the following (at p. 554): " From an examination of the will in this case I am led to the conclusion that it was the intention of the testator that the parties named should act as executors and trustees in a single capacity until the final closing of the estate; that he did not contemplate a period of time when the function of executors would terminate and the function of trustees should commence."

Perhaps the most illuminating discussion on this branch of the subject is found in the leading case of *McAlpine* v. *Potter* (126 N. Y. 285) where the court, after reviewing the previous decisions of *Johnson* v. *Lawrence* (95 id. 154) and *Laytin* v. *Davidson* (Id. 263) says (at p. 289): " Both cases agree in the rule that double commissions to the same persons, first in the character of executors and then in that of trustees, are to be awarded only when the will contemplates a several and separable action in each capacity, not at the same but different stages of the administration, and that they are not to be allowed where the will makes no such separation, but blends the two duties and commingles them without a severance. To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together.    *    *    *

" A trust duty may thus be imposed upon an executor which thereby becomes and is made a function of his office.   A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the interest of the beneficiary.   This will manifests no purpose of that character, for, *while it creates a trust* and speaks of the executors sometimes as trustees, there is no provision in it which requires or contemplates a holding of any part of the estate by trustees as distinguished from executors.    *    *    *   An examination of the cases in which

double commissions have been allowed will show that they were exceptional in their nature and contained provisions distinctly and definitely pointing to a holding by trustees as such after the duties of the executors were completed and ended. This is not such a case, and double commissions were properly withheld." (Italics not in original.)

Neither in these decisions nor in any of the others on this subject, is there any statement which when read in its context, is properly construable as holding that the cases which deny double commissions negative the existence of a valid trust. The determinations are merely to the effect that the particular variety of trustee found in these cases is not the sort of testamentary trustee to whom a second commission is payable. The fiduciary is determined to possess the dual characteristic of executor and trustee from the beginning. Viewed from certain aspects he may properly be called an executor, from other standpoints the preferable designation might be trustee; it is probable, however, that clarity of conception would be promoted by a hyphenation of these titles and a determination that his holding of the property of the estate was in the capacity of " executor-trustee."

The summary analysis in *Matter of Abrahams* was merely an enumeration of the particular circumstances deemed cogent by appellate courts in determining whether or not the representative occupied the relations of executor and trustee successively or simultaneously and consequently was or was not entitled, under section 285 of the Surrogate's Court Act, to commissions in both capacities.

The practical result of the decisions is to recognize three classifications of testamentary fiduciaries in this connection: *First*, executors; *second*, trustees; *third*, executor-trustees. An individual occupying any one of these three positions is entitled to a single commission for his service in such capacity. Strictly speaking, such sum is payable only on the completion of the service, but, as a matter of convenience, it may be split into halves at appropriate times, in the discretion of the court. This has nothing to do with his rights and obligations during his performance of the duties attached to any one of the three positions. He obviously possesses the rights and is subject to the obligations usually attached to the particular position by law. The separate duties of executor and trustee require no discussion. The duties and obligations of the third classification, created by judicial construction, combine the rights and obligations of both of the previous classes. Such a fiduciary possesses the powers and obligations of an executor by reason of his appointment as such. His duties and liabilities

as trustee are defined by the terms of the particular will which, so far as valid, is his charter of authority. His powers and duties begin on the probate of the will and his qualification as executor-trustee thereunder. They end only when all items of property in the estate have reached their directed destination according to the terms of the will. During the intervening period he possesses and is entitled to exercise all of the customary powers of an executor and trustee, so far as validly directed by the will and as implied by law, for the effecting of the proper purposes of the testator as proclaimed in the will. He may, and should, from time to time, at appropriate periods, obtain intermediate judicial settlement of his accounts, and application may properly be made by him on some such occasion for a payment on account of the single statutory commission to which he is entitled. All things being equal, judicial discretion will be exercised in its allowance. On primary principles, the entire compensation will not be paid, and final judicial settlement of accounts cannot ·take place until the entire task imposed by the will is completed.

The applicability of these principles to the case at bar will be obvious. Testatrix devised and bequeathed her entire estate to her executors in trust to pay the net income in equal shares to her two daughters, Augusta and Nellie, in equal parts until either should die or marry, and thereafter to pay the entire income to the unmarried survivor until the death or marriage of such second individual, and upon the happening of either event to distribute in possession to these two daughters and a third daughter, Eva.

The executors named in the will were the daughter Nellie and one Charles Oechler.

At testatrix's death, Augusta had married, and Eva had died leaving an infant daughter, Helen F. Bochringer, who is represented in this proceeding by her special guardian, and who is entitled to her mother's rights by substitution. (Dec. Est. Law, § 29, as amd. by Laws of 1912, chap. 384.) Both executors qualified and after serving for a time, Charles Oechler died, leaving Nellie, the accountant herein, as sole fiduciary, and also as sole immediate beneficiary of the trust.

Although the testatrix refers to the fiduciaries solely as executors, it is fundamental that the court will analyze the duties imposed and as a result of such analysis will determine the capacity in which they act, irrespective of the terminology employed in the will. (*Western Union Tel. Co.* v. *Shepard*, 169 N. Y. 170, 181; *Thurber* v. *Chambers*, 66 id. 42, 49.) From such analysis it is entirely apparent that the fiduciaries here intended were in the class of " executor-trustees " heretofore discussed. As a result,

the duties of their office began upon the probate of the will and their qualification, and will terminate only upon the complete distribution of the entire estate in possession upon the marriage or death of Nellie Galloway.

It follows, therefore, that the present accounting is merely an intermediate one, and that commissions to the accountant can be allowed only at half the statutory rates as herein prayed, since the trust will not terminate until the final distribution of all property to the ultimate remainderman.

This result is not varied by reason of the fact that in consequence of the death of the coexecutor-trustee Nellie Galloway has become the sole fiduciary as well as the sole life tenant. By reason of the provisions of section 92 of the Real Property Law, she becomes entitled by reason of the *pro tanto* merger of the legal and equitable estates to a "legal estate * * * of the same quality and duration and subject to the same conditions" as her beneficial interest. (*Rose* v. *Hatch*, 125 N. Y. 427, 431, 432, 434; *Verdin* v. *Slocum*, 71 id. 345, 347; *Greene* v. *Greene*, 125 id. 506, 510; *Woodward* v. *James*, 115 id. 346, 357; *Tuck* v. *Knapp*, 42 Misc. 140, 144; *Simonds* v. *Rowe*, 110 id. 52, 58; *Major* v. *Major*, 177 App. Div. 102, 104, 105, 106; *Weeks* v. *Frankel*, 197 N. Y. 304, 308, 309, 310.)

The last cited case is singularly in point on the facts. There testator created a trust appointing two trustees, one of whom was his son Charles and the other a friend, one Collins. Both qualified. By the terms of the trust its income was to be paid to Charles until the latter's son, testator's grandson, reached majority, after which time the income was to be paid to the grandson until the latter reached twenty-five years of age, at which time the remainder should be paid over to the grandson. Collins died leaving Charles as sole trustee. The question litigated was respecting the estate held by Charles as trustee and beneficiary prior to the time that his son, testator's grandson, reached the age of twenty-one.

The court in holding that during such period the trust was merged with the legal estate and suspended, only to revive upon the grandson reaching majority, said as follows (at p. 308): "No controversy arises with reference to the power given to the executors and trustees to sell and convey the premises in the exercise of their discretion, the sole contention being that the plaintiff, being a beneficiary of the income under the trust and also a sole surviving trustee under the will of his father, cannot, as such trustee, execute the power of sale given in the will."

At page 309: "It is now contended that the power cannot be

exercised by Charles for the reason that he is the sole beneficiary and [310] trustee. As we have seen, under the second clause of the will, Charles is entitled to the use of the real estate until his oldest child becomes twenty-one years of age. Then Charles' beneficial interest ceases and thereafter, during the continuance of the trust, the income goes to the testator's grandchildren. * * * A trust contemplates the holding of property by one for the benefit of another, and, consequently, the same person may not at the same time be both sole trustee and sole beneficiary of the same interest. Under the second clause of the will referred to we find a trust created of all of the testator's real estate. He gives the net income of such property to Charles until his eldest son, the testator's grandson, shall arrive at his majority. The effect of this is to vest in Charles the use of the real estate until the happening of that event. From that time until the eldest child becomes twenty-five years of age the rents and income from the real estate are to be collected and paid over to the testator's grandchildren in equal shares, after which the trust terminates and the real estate is divided among the grandchildren. Under section 72* of the Real Property Law it is provided that ' every person, who, by virtue of any * * * devise is entitled both to the actual possession of real property, and to the receipt of the rents and profits thereof, in law or equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions, as his beneficial interest.' The giving to Charles of the use of the real estate during the minority of the eldest grandchild would ordinarily vest in him a legal estate and not constitute a trust were it not for the fact that the possession of Charles in the real estate was shared by his cotrustee; but as soon as that trustee died Charles became entitled to the sole possession as well as to the entire rents and profits, and, therefore, under the provisions of the statute his interest became a legal estate, in which his beneficial estate merged and so continues until the same is terminated by the arrival of the eldest grandchild at the age of twenty-one years, and when that time arrives the trust estate for the benefit of the grandchildren commences and continues until the trust under the provisions of the will is terminated.

" If we are correct in thus construing the provisions of the will it follows that there is nothing in the provision that makes Charles a trustee for himself that is inconsistent with his acts as trustee for his own children for the period of time specified in the will. He is given the use of the real estate until his eldest child becomes twenty-one years of age, then he holds the real estate in trust for

* Now section 92. — [REP.

his children until the eldest arrives at twenty-five years of age, at which time the trust is terminated and the real estate is divided among the children. If he is not a trustee for himself with a beneficial [312] interest, but is the holder of a legal estate, it would follow that there was nothing in the provisions of the trust that would impair his right to exercise the power of sale given by the will."

On the authority of these decisions, it is apparent that during the period in which Nellie Galloway is the sole beneficiary, the trust becomes dormant, but it will revive either upon her marriage or death, whichever event shall first occur. At such time final distribution of the property in possession will become her obligation, if living, or if she be dead, that of her personal representatives. This follows from the fact that the final distribution upon the termination of the trust is as much a part of the duties of a trustee as the administration of the fund prior to the arrival of such time. (*Matter of Gargiulo*, 134 Misc. 182, 186, and cases cited.)

Since the events which have transpired are other than those contemplated by the testator, it is proper for the accountant, on paying over to herself as life tenant the full avails of the estate, to file a bond as she has asked authority to do, for the purpose of assuring the remaindermen of their ultimate distributive shares. (*Matter of McDougall*, 141 N. Y. 21, 28; *Tyson* v. *Blake*, 22 id. 558, 563; *Smith* v. *Van Ostrand*, 64 id. 278, 286; *Bliven* v. *Seymour*, 88 id. 469, 478; *Livingston* v. *Murray*, 68 id. 485, 493.)

Proceed accordingly.