In re KELLEY'S ESTATE. FOOT, Executor, Appellant, *v.* KELLEY, Respondent.

(No. 6,834.)

(Submitted November 3, 1931. Decided December 1, 1931.)

[5 Pac. (2d) 559.]

*Mr. G. H. Grubb, Mr. E. B. Foot* and *Mr. A. T. Aronson,* for Appellant, submitted a brief; *Mr. T. H. MacDonald,* of Counsel, submitted a supplemental brief, and argued the cause orally.

102

No appearance on behalf of Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by C. H. Foot, as executor of the estate of Eugene E. Kelley from a part of an order settling his report and account of the administration of the estate.

It appears that Eugene E. Kelley died testate. By his will he devised a life estate in certain real property used as the home, to his wife, Helen F. Kelley, and bequeathed to her an annuity of $100 per month during her life. The residue of the property was devised and bequeathed to C. H. Foot in trust for the following purposes: (1) the income, proceeds, increase, interest, and profits to be applied on the payment of the annuity to the wife; (2) when Lee D. Kelley, the son of the testator, who, the record shows, was born in 1892, should arrive at the age of thirty years, he was to have a deed to certain described property; and (3) upon termination of the life estate of Helen F. Kelley in the real estate devised to her, if Lee D. Kelley was then of the age of thirty-five years, he was to have a deed to the property. When Lee attained the age of forty years he was to have the residue of the estate.

The account and report covered the period from 1915 to 1929, and showed, among other things, that the executor bor-

rowed money from time to time, giving a note therefor bearing interest, in order to pay taxes on real property belonging to the estate, and that he paid interest on these notes aggregating in amount the sum of $2,005.13, for which he claimed credit. Objections were filed by Lee D. Kelley to this item of the account and report, as well as to others not here involved. The objections raise the question of the right of the executor to borrow money for the payment of taxes without a court order, and of his right to an allowance for interest paid thereon, and whether the report does not itself show that it was unnecessary to borrow money with which to pay taxes. The court disallowed the item as a credit, and the appeal questions the propriety of the order in so doing.

Can an executor borrow money for the estate for any purpose without a court order? That he may not do so for general purposes is clear. (Sec. 10196, Rev. Codes 1921; *In re Jennings' Estate*, 74 Mont. 449, 241 Pac. 648.) But may he do so for the purpose of paying taxes and thus preserving the property of the estate? The better practice is to obtain a court order in every case where the statute requires; but the law does not condemn every act of an executor proceeding without previous court order, even though one is required. (*In re Connolly's Estate*, 73 Mont. 35, 235 Pac. 408; *In re Connolly's Estate*, 79 Mont. 445, 257 Pac. 418.) It is the duty of an executor, without an order of the court, to preserve the property of the estate. (*In re Smith's Estate*, 118 Cal. 462, 50 Pac. 701; *In re Fulmer's Estate*, 203 Cal. 693, 58 A. L. R. 430, 265 Pac. 920, 922.) The right to do so was impliedly recognized by this court in *First Nat. Bank of White Sulphur Springs* v. *Collins*, 17 Mont. 433, 52 Am. St. Rep. 695, 43 Pac. 499. Acts done without court order when one is required are at the peril of the executor (*In re Connolly's Estate*, both cases, supra; and see *Kelly* v. *Kelly*, 89 Mont. 229, 297 Pac. 470); yet, as stated in *In re Fulmer's Estate*, supra: "If the acts of an administrator are in pursuance of, and in accordance with, law, he need not necessarily secure an

order of court to protect him in the performance of his duties. (*Estate of Bottoms,* 156 Cal. 129, 133, 103 Pac. 849.)''

It is the duty of an executor to pay taxes to prevent the sale of property therefor as a part of his duty to preserve the property for the estate. (*Long* v. *Landman,* 118 Mich. 174, 76 N. W. 374; *In re Hurley's Will,* 193 Wis. 20, 213 N. W. 639; *In re Porter's Estate,* 129 Cal. 86, 79 Am. St. Rep. 78, 61 Pac. 659; *Pfefferle* v. *Herr,* 75 N. J. Eq. 219, 138 Am. St. Rep. 518, 71 Atl. 689.) And he is entitled to credits for payments made for taxes, though done without court order. (*In re Clark's Estate,* 203 Iowa, 224, 212 N. W. 481.) And had he paid the taxes out of his own funds he would have been entitled to credit for the amount paid, together with interest from the date of payment. (*In re Hansen's Estate,* 55 Utah, 23, 184 Pac. 197.) Certainly, no different rule should apply where he borrows the money for the estate for that purpose and pays out interest on the money borrowed, as here. That he has the right to recover advances to the estate is clear. (*In re Williams' Estate,* 47 Mont. 325, 132 Pac. 421.)

The general rule is that legal interest should be allowed the executor on necessary advances made in good faith and when beneficial to the estate. (Schouler on Executors and Administrators, 5th ed., sec. 1542, note 5; *In re Carpenter's Estate,* 146 Cal. 661, 80 Pac. 1072; *In re Clos' Estate,* 110 Cal. 494, 42 Pac. 971; *Liddel* v. *McVickar,* 11 N. J. L. 44, 19 Am. Dec. 369; *In re Murphy's Will,* 213 App. Div. 319, 210 N. Y. Supp. 531; *Trimble* v. *James,* 40 Ark. 393; 24 C. J. 114.) And this is so when the executor borrows without authority of law. (*Deery* v. *Hamilton,* 41 Iowa, 16; *Thomas* v. *Provident Life & Trust Co.,* 138 Fed. 348, 70 C. C. A. 488.) As much was held in the case of *In re Jennings' Estate,* supra, as to money borrowed for emergency purposes. This policy is proclaimed by statute. (Sec. 7917, Rev. Codes 1921.)

Failure to procure a court order before borrowing the money is no justification for disallowing the credit in question.

Does the account and report show that it was unnecessary for the executor to borrow money for the payment of

taxes? The objector has made no appearance in the case on appeal, and we are not advised of his contentions, save as they appear from the objections interposed to the account. From the objections as a whole we conclude that his contention is this: That, if the executor had carried out what the objector contends is the correct interpretation of the will, he would have had sufficient money from the rents, issues, and profits of the estate property with which to pay taxes without borrowing; that, if the executor had used the estate money for paying taxes rather than the widow's annuity, borrowing would have been unnecessary. This makes it necessary to determine whether under the will the executor was obliged to pay taxes and other expenses in preference to the widow's annuity.

The will, after providing for an annuity of $100 per month for the widow, declares: "The payment of such annuity shall be charged upon the interest, increase, income and profits of any other estate than the aforesaid home property of which I shall die seized or possessed in law or in equity." It directed that the payments be made in twelve equal monthly installments of $100 each on the first of each month. The residue was devised and bequeathed to C. H. Foot in trust for the following purposes, among others: "(a) From the income, proceeds, increase, interest and profits of said property my said trustee shall pay the aforesaid annuity to my said wife in the manner provided herein." The will directed the trustee to keep the property in repair and in case of the destruction of any of the buildings to replace and rebuild them to the extent the money available would permit, and then contained this clause: "provided always that said trustee must at all times keep provision for the payment of said annuity to my wife."

"An annuity is a bequest of certain specified sums periodically; if the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy." (Subd. 3, sec. 7051, Rev. Codes 1921.) And property devised or bequeathed to a residuary legatee may be resorted to for payment of debts and legacies. (Secs. 7053, 7054, Id.) In view of our statutes and the terms of the will,

the annuity, being unconditional and absolute, was payable out of the *corpus* of the estate. (3 C. J. 213; 2 R. C. L. 8; *Brickell* v. *Powell,* 148 Miss. 491, 114 South. 328.) Hence it follows that the executor was entitled to pay the annuity to the widow and was not obliged to withhold those payments in order to have on hand money with which to pay taxes. The court so held in approving the account in this respect, and no appeal has been taken from this part of the order, and no cross-assignment of error in this respect has been made. The court erred in disallowing the item of $2,005.13. The executor is entitled to credit for that item as having been expended necessarily for interest on money borrowed in good faith to pay taxes and which was expended for the benefit, and to preserve the property, of the estate.

The only other question presented by the appeal is the proper commission to be allowed the executor under the circumstances presented.

The will, after devising the residue of the estate to C. H. ██ ██ Foot, in trust, contains this clause: "I hereby nominate and appoint said trustee, C. H. Foot, executor of this my last will and testament." The only provision made in the will for compensation is the following: "I hereby declare, and it is my will, that any trustee acting under this will shall receive in full compensation for all his services as such trustee a commission of not to exceed five per centum upon all gross *incomes, rents, issues and profits* of my estate during the time he is acting as such trustee, such commission to be paid *monthly.*" The will is silent as to the compensation to be paid to the executor as such.

The inventory value of the estate was $10,129.94. The first annual report filed January 23, 1915, showed rents and income amounting to $3,044.79 The report here involved shows rents and income amounting to $11,453.86. The court limited the executor to an allowance, as commission, of five per cent. of the total rents and income; i. e., five per cent. of $14,498.65, or $724.90. The executor contends that the fee should have been based upon section 10287, Revised Codes 1921, and should

have covered not only the rents and income, but also the inventory value of the estate. He contends that he is still acting as executor, and that he has not yet assumed the duties of trustee under the will, for this can only be done after the residue of the estate passes to him as trustee upon final settlement and distribution of the estate.

Where a will such as the one before us directs the payment of debts and legacies and then gives a residue in trust, it contemplates separate duties as executor and trustee, and commissions will be allowed in both capacities. (*In re Horner's Estate*, 126 Misc. Rep. 772, 215 N. Y. Supp. 654; *In re Halbert's Will*, 141 Misc. Rep. 181, 252 N. Y. Supp. 355; *Johnson* v. *Lawrence*, 95 N. Y. 154.)

It is clear that, had the executor in this case distributed the estate within a reasonable time after his appointment and then performed the duties required of him under the will as trustee, he would have been entitled to a fee as executor under section 10287, based upon the inventory value of the estate, and such rents and income as he collected prior to his discharge as executor; and as trustee he would have been entitled to a commission not exceeding five per cent. of the gross income, rents, issues, and profits thereafter collected. And there is authority that compensation will be allowed in both capacities even though the trust duties contemplated by the testator have been performed before there has been an accounting by the executor and an actual transfer of the trust property to the trustee by decree of court (*Olcott* v. *Baldwin*, 190 N. Y. 99, 82 N. E. 748; *In re Steelman's Estate*, 87 N. J. Eq. 270, 99 Atl. 612); the theory being that the court will consider that as done which should have been done (*Abell* v. *Brady*, 79 Md. 94, 28 Atl. 817), and in such cases will allow an executor's fee on the *corpus* of the estate alone and the trustee's fee on the rents, issues, and profits pursuant to the terms of the will (*Appeal of Larrabee*, 98 N. J. Eq. 655, 130 Atl. 195), thus carrying out the intention of the testator.

But whether this rule should have application here need not be determined. If we adopt the contention of the executor

here, his fee will be less than what it would be were we to attempt to make a severance of the executorial duties from those of trustee and award compensation accordingly. Since he is asking a straight executor's fee under section 10287, based upon the inventory value of the estate together with the rents, income, issues, and profits, we need not stop to consider whether he is entitled to more. Under no theory under the facts shown can he be compelled to take less. His contention must therefore be sustained.

Were the executor claiming a fee for handling the rents, income, issues, and profits in excess of that provided by the will, and not less, we would be inclined to the view that he could not, by continuing to act as executor beyond the time required by law and the terms of the will to close the estate and transfer the property to the trustee, enlarge the fee contemplated by the will. In such a case we would favor the rule announced in the case of *Abell* v. *Brady*, supra, where the court said: "Now, if there is a principle of testamentary law settled beyond controversy in this state, it is that, where the same person is both executor and trustee under a will, the law will adjudge the fund to be in his hands, in the capacity of trustee, after the time limited by law for the settlement of the personal estate; and this, too, whether he has or has not passed his final account in the orphans' court, for the reason that that which the law has enjoined upon him to do shall be considered as having been done, and from that time he holds the fund by operation of law in that character in which he would be entitled to receive it upon a final completion of his trust as executor. * * * And it is equally well settled that one who sustains this twofold relation cannot, at his own election, continue to act in the capacity of executor after the time allowed by law for the settlement of the estate has elapsed, 'and after the arrival of the period when he ought to have acted as trustee, and discharged his duties pertaining to that capacity.' "

The court erred in not allowing the executor a fee based upon the inventory value of the estate as well as upon the

rents, issues, income, and profits. The court found that the executor has already been paid $152.25. The record shows ▮ that on September 11, 1915, he was paid $100 as executor fee. On June 12, 1915, he paid out $27.25 to C. E. Foot for services in looking after rents. Since this was for services required of the executor, it was properly held by the court to have been paid toward the fee due him. But the other $25, making up the $152:25, the record shows, was for costs and expenses of administration and does not appear to be for fees of the executor. To that extent the order must ▮ also be modified. The court may properly decline to allow payment of the full executor fee until final settlement of the estate. (*In re Galloway*, 139 Misc. Rep. 183, 248 N. Y. Supp. 153.)

The order appealed from is reversed and the cause remanded, with direction to modify the order in accordance with the views herein stated.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.