BRICKELL *v.* POWELL *et ux.**

(Division A.   Oct. 24, 1927.)

[114 So. 328.   No. 26591.]

1. WILLS.   *Direction to pay annuity from rents and profits charges
   only such rents and profits, and not corpus of estate, unless con-
   trary intention appears.*

   Direction to pay an annuity out of rents and profits of lands charges
   only such rents and profits, and not the *corpus* of the estate, un-
   less a contrary intention appears, and can only be enforced
   against trustee personally, in so far as he has received such rents
   and profits.

2. WILLS.   *Annuity, made indefinite and unlimited charge on rents, is-
   sues, profits, and income, may be paid out of corpus where such
   intention appears.*

   Where testator intended in creating annuity to care for and main-
   tain annuitants in comfort and gift was made an indefinite and
   unlimited charge on rents, issues, profits, and income, resort
   may be had to *corpus* of estate in case income is insufficient, not-
   withstanding use of words denoting that payment was to be made
   out of the rents, issues, profits, and income.

3. Wills. *Allowing interest on arrears in annuity on ordering payment from corpus of estate held not abuse of discretion.*

On determining that arrears in annuity were payable out of *corpus* of estate, allowance of interest thereon *held* not an abuse of discretion.

---

*Corpus Juris-Cyc. References: Annuities, 3CJ, p. 211, n. 10; p. 212, n. 19 New, 21, 22, 23; p. 213, n. 24; Appeal and Error, 4CJ, p. 796, n. 15. As to whether testamentary annuity is payable out of *corpus* or income, see annotation in L. R. A. 1917E, 580 *et seq.*, 2 R. C. L. 8; 1 R. C. L. Supp. 366.

Appeal from chancery court of Yazoo county.
Hon. V. J. Stricker, Chancellor.

Suit by John F. Powell and wife against H. H. Brickell, trustee of the estate of J. F. Powell, deceased. Decree for complainants, and defendant appeals. Affirmed.

*N. R. Norquist,* for appellant.

In construing this will, if it is apparent that it was the intention of the testator that the *corpus* is to remain intact on the death of the annuitants, it cannot be ' resorted to in case the income is insufficient. See 3 C. J., page 213. It would appear from the language employed by the testator that it was manifestly his intention that the *corpus* of his estate should not be disturbed during the life of the annuitants. He directs that "out of the rents, issue, profits and income of said property" the annuities should be paid and further provides that "the rest and residue of such rents, issues, profits and income, after the payment of all expenses necessary for the proper improvement, management and maintenance of said property shall become a part of the *corpus* of my estate, and said trustee shall invest the same or any other idle monies that he may have in his control, by lending out same."

Certainly the annuitants, because of the trust created, received no higher rights or superior title than they

would have received had the property been devised and bequeathed to them directly. Such property was bequeathed and devised in trust to the trustee therein named "to have and hold in trust for the use of my son, John F. Powell, and his wife, Virginia B. Powell, for and during their natural life. . . ." Eliminating the trust feature, the appellees would have received a life estate in said lands. See 28 R. C. L., page 240, Wills, paragraph 203. In this state of case the appellees would have the land for life with all the income, rents and profits therefrom, but of course could not have disposed of the fee. Had such property been devised and bequeathed to them directly and the net profits of the same proved insufficient to defray living expenses, certainly appellees could not be heard to complain or resort to the sale of the *corpus* of the estate because such action would be to their financial benefit.

Further evidence of the fact that the testator did not intend the sale of the *corpus* of the estate for any cause except for reinvestment is to be found in said Item 4 of his will, in which he provides the manner in which any of such *corpus* might be sold, stating that the trustee "may with the consent of the chancellor of the Yazoo county chancery court sell and dispose of the property bequeathed and devised to said trustee and in case of sale shall invest the proceeds as aforesaid." This is the only provision in the will by which a sale of the *corpus* is authorized and it expressly provides that the proceeds shall be invested, absolutely negativing any idea that the *corpus* might be sold for any other reason.

It is my understanding that it is agreed by counsel in this case that "a direction in a will to pay an annuity out of the rents and profits of land, charges only the rents and profits and not the *corpus* of the estate, unless a contrary intention appears, and can only be enforced against the trustee, personally, so far as he had received such rents and profits." And it is submitted that under the above announcement of the law only the rents

and profits and not the *corpus* of this estate are liable for such annuities.

As to the interest allowed upon such annuities, it is alleged by the bill and admitted by the answer in this cause that the trustee had no funds in his hands with which to pay the annuities as they became due. The trustee had no way in which to secure such money and will not be able to secure the same unless a sale of the *corpus* of the estate is authorized by decree of this court. It would appear that the allowance of interest in a case of this nature is largely a matter in the discretion of the court, taking into consideration all the circumstances of an instant case, but we submit that the estate in this case should not be liable for interest on unpaid annuities under the circumstances here shown.

*J. G. Holmes,* for appellees.

The appeal presents two legal questions; first, whether or not the annuities are a charge upon the *corpus* of the estate, it appearing that the income of the estate is insufficient to pay the same; and, second, whether or not interest is recoverable on the past due annuities. The determination of these questions involves a construction of the will of the decedent. For the law governing the construction of the will, see: 3 C. J., 212; *Perkins* v. *Bank,* 81 Miss. 361; *Knotts* v. *Bailey,* 54 Miss. 238; *Heatherington* v. *Lewenberg et al.,* 61 Miss. 373; 3 C. J. 213; *Charter Oak Life Ins. Co.* v. *Grisborne,* 5 Utah 319, 15 Pac. 253, affirmed by the supreme court of the United States, in 142 U. S. 326.

To sum up the legal principles applicable to a construction of the will at bar: (1) The annuities are chargeable upon the *corpus,* in case the income is insufficient, if this appears to be the manifest intention of the will. (2) If it is the manifest intention of the testator that the annuities should be paid at all events, no matter in what part of the will it appears, the annuity

is a charge upon the *corpus.* (3) If the annuity is made an unlimited and indefinite charge upon rents and profits, resort may be had to the *corpus,* in case the income is insufficient. (4) Unless the words "rents, issues and profits" be connected with other words which restrain the meaning of the terms to be rents, issues and profits as they arise; that is, to the annual rents, the courts will give the words a meaning broad enough to include the sale of the property itself.

It is manifest from the whole will that it was the purpose of the testator to provide a support for his son and his son's wife during their lives. *Brickell* v. *Lightcap,* 115 Miss. 456. That the testator's son was the principal object of his bounty is made more apparent by the provision in the will that on the termination of the trust the fee should vest in the children of John F. Powell, or the descendants of such children, and only in the absence of such children was the fee to vest in the collateral heirs of the testator. This son, therefore, was manifestly the principal object of the testator's bounty, and undoubtedly his chief concern and purpose was to provide at all events a support for him and his wife so long as they lived.

It will be observed that the property is devised in trust for the use of the annuitants, thus showing the primary purpose in the mind of the testator to use the whole property for the benefit of his son and his son's wife, in order that it might provide a support for them so long as they live, since the matter of their support was apparently the testator's chief concern.

It is not consistent with reason or with human nature that this father, who had only one child, a son, and who was seeking to provide a support for that son and his wife during their lives, should have intended to charge the lands of his estate with the payment of specific legacies bequeathed to non-relatives, and at the same time relieve these same lands from the payment of the annuities provided for his only son. Looking through the

whole will and considering the relationship of the parties and the apparent purpose of the testator to provide at all events support for his son and his son's wife so long as they lived, it becomes manifest that the testator intended that the support should be available at all events, and that resort to the *corpus* might be made if the income should be insufficient. The provision for the excess income, if any, was no doubt written by the testator in view of prevailing conditions which then yielded an excess income.

For definitions of the words "rents, issues and profits," see *Charter Oak Life Ins. Co. v. Grisborne,* 5 Utah 319, 15 Pac. 253.

*The annuities are an unlimited and indefinite charge.* There is one outstanding thing which, under the principle of law just quoted, renders the conclusion inescapable that the *corpus* of the estate is charged with the payment of the annuities and that is the provision in the will which authorized the trustee without restriction or limitation to increase the amount of the annuity. This clause gives to the trustee the absolute power without restriction or limitation as to amount to increase the annuity if in his opinion it should become expedient and proper for the comfort and convenience of the annuitants so to do. This power is given to the trustee irrespective of whether the income should be more or less than the amount of the annuity which he, the trustee, might determine for any reason to be necessary for the comfort and convenience of the annuitants. The effect of the clause is to provide for the son and the son's wife support commensurate with their needs, regardless of whether the amount necessary therefor should be more or less than the income from the property of the estate. This clause in the will in itself is sufficient to charge the *corpus* with the payment of the annuities.

See *Gillespie et al. v. Boisseau et al.* (Ky.), 64 S. W. 730, for the purpose of general analogy. In the case cited the court held that annuity to be a charge upon the

*corpus,* although the language of the will was more restrictive than is the language of the will in the case at bar.

*Anderson* v. *Anderson* (Miss.), 112 So. 603, is cited here for the purpose of analogy, and because of the great similarity in purpose of the respective testators in such case and the case at bar, and because also it is strongly persuasive of the correctness of the contention of appellees in the case at bar.

*The question of interest on arrearages.* The chancellor allowed interest on the arrearages of annuities from the time the installments of the annuities became due and payable. The amount of interest is not questioned. The trial court having exercised its discretion by allowing interest, this court will not disturb the finding unless it appears that there has been a clear abuse of such discretion. The view that the allowance of interest in such cases is discretionary with the court, is adopted in only a few cases. The great weight of authority supports the view that interest is recoverable, particularly in cases where the annuity is given for the support and maintenance of a wife or child. 2 R. C. L., page 10, and authorities there cited.

McGOWEN, J., delivered the opinion of the court.

In the chancery court of Yazoo county, John F. Powell and Virginia Powell, his wife, exhibited their bill of complaint against H. H. Brickell, trustee of the estate of J. F. Powell, deceased, alleging that J. F. Powell, deceased, departed this life in 1909, testate. They make his will and the codicil thereto exhibits.

They allege that, under the terms of said will, the decedent provided for them jointly an annuity, payable monthly, of two thousand dollars per annum during their natural lives, and further recited the terms of the will, especially that said trustees were empowered thereby to increase their annuity, and that said trustees increased said annuity to five thousand dollars per annum.

148 Miss.—32.

The named trustees resigned and were lawfully succeeded by J. J. North, J. B. Ellis, and H. H. Brickell—subsequently North and Ellis resigned, and later the chancery court reduced the number of trustees to one, H. H. Brickell, who continues to be the lawful trustee of said estate.

It was further alleged that the rents, issues, profits, and income arising from said trust estate have been and are now insufficient to pay to them their annuity to which they were entitled under the terms of said will, and that the defendant trustee is in default in the payment of said annuity to the amount of thirty-eight thousand three hundred eighty-five dollars and twenty-six cents, of which amount John F. Powell is due thirteen thousand six hundred forty-three dollars and sixty-three cents, and Virginia Powell is due twenty-four thousand seven hundred forty-one dollars and sixty-three cents, to December 1, 1926, and that said sum is a debt due the complainants together, with legal interest thereon from the respective date said sum became in default.

The bill charged that the arrears of annuity alleged to be due the Powells was a charge on all the property embraced in the trust estate, and alleged that the will had been so construed by said chancery court on December 31, 1920, on a bill to construe same, and attached a copy of the court's decree to that effect, and the said petition prayed for said will to be construed.

It then describes many acres of land as constituting the *corpus* of the estate, and charges that complainants were entitled to have all, or such parts, of said land sold as were necessary to pay their annuity in arrears.

The prayer of the bill was that the amount of annuity due and in arrears, and interest, be ascertained by the court, and that a charge of the *Corpus* of the estate be fixed by the court for said sum, and for a sale of the lands.

The answer of the defendant trustee admitted all the facts, but denied that, as a matter of law, the will should

be so construed as to fix a charge on the *corpus* of the estate for annuity in arrears, or for interest, but averred that the annuitants could only resort to the rents, issues, profits, and income of the estate.

The court granted the decree prayed for, fixed the amount due as alleged, and ordered a sale of the lands to pay said amount and interest.

The material part of the will is item 4 and a part of the codicil, which we here set out:

"Item number four. All the rest and residue of my property, both real and personal, I will, bequeath and devise, in trust, to Thomas H. Campbell, Sr., trustee, for the purpose hereinafter specified and with the limitations and exceptions hereinafterwards mentioned, to have and to hold in trust for the use of my son, John F. Powell, and his wife, Virginia Powell, for and during their natural lives, and in the event of the death of either, for the use and benefit of the survivor for and during his or her natural life, and upon the death of the survivor, the trust herein mentioned shall terminate, and the property herein devised to said trustee shall vest in the children of John F. Powell, or the descendants of such children. And in the event of the death of said John F. Powell without children, or descendants of children, then upon the death of Virginia Powell, the wife of John Powell, the property devised in trust, as aforesaid, shall vest in my right heirs forever.

"I further direct that out of the rents, issues, profits and income of said property that said trustee, or his successor, shall pay John F. Powell and his wife, Virginia Powell, during their natural lives, jointly, the sum of two thousand dollars, per annum, said sum to be paid in monthly installments; and upon the death of either John F. Powell or his wife, said sum shall be paid to the survivor for and during his or her natural life; and the rest and residue of such rents, issues, profits and income, after the payment of all expenses necessary for the proper improvement, management and maintenance of said prop-

erty, shall become a part of the *corpus* of my estate, and said trustee shall invest the same or any other idle moneys that he may have in his control, by lending out the same and taking as security therefor first mortgage on real estate or other undoubted security, at the highest rate of interest obtainable, which is consistent with safety and security.

"I further direct that the said trustee or his successor in office, may, with the consent of the chancellor of the Yazoo county chancery court, sell and dispose of the property bequeathed and devised to said trustee, and in case of sale shall invest the proceeds as aforesaid, but it shall not be incumbent on the purchaser to see to the application of the proceeds.

"The real estate herein devised to said trustee is upon the following conditions and limitations and exceptions, that I hereby devise the house and lot in Yazoo City now occupied by me as a residence to my son, John F. Powell directly, absolutely and in fee simple.

"I further direct that the said John F. Powell and his wife, Virginia Powell, may select as their home to be resided upon by them any of the plantations comprised in the real estate devised herein, and shall have the same free from all rent while so occupied by them, but the title to such plantation if so selected shall not be divested out of said trustee.

"The income herein provided for the benefit of John F. Powell and his wife, Virginia Powell, shall not be anticipated by them, or either of them, nor shall the property devised to said trustee be in any way liable for any debts incurred by said John F. Powell and Virginia Powell, or either of them.

"I further direct that, if from ill health or other unforseen cause, in the opinion of said trustee, it should become expedient and proper, for the comfort and convenience of said John F. Powell and Virginia Powell, or either of them, that the income herein provided for their

benefit should be increased, the said trustee shall have
the power to do so.''

## ''Codicil to Will.

'' This codicil to my foregoing will and testament made,
published and declared this 19th day of August, 1909.
In addition to T. H. Campbell, Sr., named in item 4 of my
said will, I hereby appoint R. W. Crook and the Bank
of Yazoo City as trustees to act jointly with said T. H.
Campbell, Sr., and all powers vested in said Campbell
as trustee are hereby vested in said T. H. Campbell, Sr.,
R. W. Crook, and the Bank of Yazoo City. In the event
of the death of either the said Campbell or Crook, they
shall have power to appoint by will their successors. I
direct that the trustees herein named and the executor
named in my will be not required to give any bond as
such.''

As agreed by counsel for appellant and counsel for ap-
pellees, the precise questions presented on this appeal
are, first, whether or not the *corpus* of the estate can be
subjected to the payment of the annuities; and second,
whether or not the said estate is liable for interest on
the annuities in arrears.

In stating the points submitted to us, we have been
careful to quote literally from the brief of counsel for
the appellant in order that it may be clearly understood
that in this opinion we shall confine ourselves strictly
to the questions presented to us by the briefs of counsel,
and to no other.

First. It is necessary for us to consider the whole
will in order to determine whether or not the *corpus* of
this estate may be resorted to for the payment of the ar-
rears of annuity provided for appellees.

Item 1 sheds no light as it provides for a number of
legacies unnecessary to detail. Item 4 bequeaths and
devises the *residuum* of the testator's estate to Thomas
H. Campbell, as trustee, for the purposes thereafter
mentioned, and with the limitations thereafter mentioned.

It provides that the estate is held in trust for the use of testator's son, John F. Powell, and his wife, Virginia Powell, during their natural lives, and likewise to the survivors of either during his or her life; and then the trust estate terminates, and the title to the property vests, first, in the children of John F. and Virginia Powell, or the descendants of said children; and, second, if there were no children or descendants of said children, then the property vested in the rightful heirs of the testator forever. The pleadings disclose that John F. and Virginia Powell never had any children.

It is next directed that out of the rents, issues, profits, and income of said trust property the trustee or his successor should pay to John F. and Virginia Powell, during their natural lives, jointly, the sum of two thousand dollars per annum, paid monthly, and if either died said sum was to be paid to the survivor for life. The rest of such issues, profits, and income, after payment of expenses, was to be and become a part of the *corpus* of the estate, with power vested in the trustee to safely invest. Power was vested in the trustee or his successor to sell the trust property, with the consent of the chancery court of Yazoo county, and reinvest the proceeds, and purchasers were relieved of seeing to the proper application of the proceeds of said sales.

The house and lot occupied by testator in Yazoo City were excepted from the trust and vested in John F. Powell in fee simple.

The further exception was that John F. and Virginia Powell were given the right to select as their home any, of the plantations, free from rent; the title, however, vested in the trustee.

It was provided that the income was not to be anticipated by John F. and Virginia Powell, or either of them, nor to be liable for their debts, or the debts of either.

The said trustee was then given the power to increase the annuity if from ill health or other unforeseen cause, in the opinion of said trustee, it should become expedient

and proper. Item 5 names Crook as executor and directs a speedy administration, etc.

The codicil names R. W. Crook and the Bank of Yazoo City as trustees to act jointly with T. H. Campbell, Sr., and gives to Crook and Campbell the power to name by will their successors.

It is apparent, from the terms of the will, that the testator had in mind the maintenance and support, in comfort, of his son John F., and daughter-in-law, Virginia. The testator owned much land and considered himself a wealthy man in that community. It has developed that rents, issues, profits, and income of the trust estate have not been adequate to pay the increased annuity.

Appellant's position is that from this whole will it is apparent that testator intended that the *corpus* of this trust estate should be held intact and finally delivered to the ultimate limitees, and insists that the language employed demonstrates that the *corpus* of the estate should not be disturbed during the lifetime of the annuitants. As evidence of this contention, it is pointed out that the testator directed annuity to be paid "out of the rents, issues, profits, and income of said property," and provides for the investment and management of said rents, issues, profits, and income with great care and particularity, evidencing a desire to augment same. Appellant further says that, but for the trust set up, the annuitants would have received a life estate, and hence in that court could not resort to the *corpus* of the estate. Appellant stresses the limitations and exceptions, among which are the reinvestment of surplus funds; that the trust estate is not to be liable for or subjected to the debts of the annuitants, or the income anticipated by them; and the fact that the testator provided the manner in which the *corpus* might be sold by the trustee for the purpose of reinvestment negatives the idea that it might be sold to pay the annuity, or for any other reason.

We have stated rather succinctly all the provisions to which the appellant directs us, not for the purpose of

taking them up *seriatim,* as this is unnecessary in view of our conclusion.

We understand appellant and appellees to agree to the following fundamental rule of law which controls us in construing the will; but whether they so agree or not, it is correct, and is our polestar in this case. A direction to pay an annuity out of rents and profits of lands charges only such rents and profits, and not the *corpus* of the estate, unless a contrary intention appears, and can only be enforced against the trustee personally, in so far as he has received such rents and profits.

It cannot be gainsaid that the dominant thought of this testator was to provide for the maintenance and support, in comfort, of these annuitants, and if he has evinced this in his will, we must so hold.

The directions in this will as to this trust are consonant with, and reflect a good business man's desires and instructions, and do not reflect the view that, in an iron clad way, he desired to hamper and restrict his son, and his son's wife to less than a life of ease and comfort. The son was the natural object of his affection and bounty; the son and wife were, doubtless, well known to him and well beloved by him, while those who receive the remainder estate here, in the one contingency, were not in existence, and in the other, were collateral relatives, the identity of whom could not then, with certainty, be declared. He did not trust this son's business acumen and thrift, evidenced by the fact that he protected this estate from his son's debts, not to deprive the son of the estate, but to assure its preservation for the purposes of the trust, the main object of which was, clearly, the annuitants' maintenance in comfort.

Why do we say that? Because he did not trust his own judgment as to the amount to be paid these annuitants, his own judgment being that two thousand dollars per annum would care for them, but he does not stand upon that, but lodges the power in the said trustees to increase the annuity, but not to reduce it, thus rendering

the amount of the annuity to be computed in their honest discretion, and resulting in the amount thereof indefinite and unlimited, looking only to the accomplishment of his purpose to devote this trust to the annuitants' maintenance, in comfort. Evidently, he realized that he could not foresee their necessities in the coming years, nor the shifting changes in values wrought by the lapse of years.

At all events, he evidently intended this trust estate to be devoted primarily for the use of the annuitants, otherwise he would not have invested the trustee with the broad, sweeping power to substitute his judgment for that of his own. This grant of power shows that he did not intend to relieve the *corpus* of his estate.

The mere use of the words, "out of the rents, issues, profits and income," does not show, at all, that he intended to relieve the *corpus* of the estate from the *onus* of a support, and maintenance for these annuitants, but, to the contrary.

In the case of *Charter Oak Life Insurance Co.* v. *Gisborne*, 5 Utah, 319, 15 P. 253, in this connection, the court said: "The meaning of the words, 'rents, issues and profits' has often been before the courts; and by a long line of decisions the courts of chancery have declared that, unless these words be connected with other words which restrain the meaning of the terms to the rents, issues and profits as they arise (as if the trust is to pay debts out of the annual rents) the court will give the words a meaning broad enough to include the sale of the property itself. The strict meaning of the words, as opposed to land, is the annual rents, issues and profits; yet the courts hold that they should not be confined thereto, but should be taken, in a more enlarged sense, to include every mode by which land may be made to yield profits, out of which money so charged upon it may be taken, and, consequently, to include the sale of the property itself. The doctrine is thus laid down broadly by Judge Story in his work on Equity Jurisprudence."

The *Gisborne case, supra,* originated in the territory of Utah, and was appealed to the supreme court of the United States, and the conclusion of the territorial court was approved by that court in the case of *Gisborn* v. *Charter Oak Life Ins. Co.,* 142 U. S. 326, 12 S. Ct. 277, 35 L. Ed. 1029. Also, see Story, Eq. Jurisprudence (11 Ed.), section 1064a; Pomeroy, Eq. Jurisprudence (4 Ed.), section 1237, pages 2971, 2972. Also, as analogous to this case is *Gillespie* v. *Boisseau* (Ky.), 64 S. W. 730.

In *Heatherington* v. *Lewenberg,* 61 Miss. 372, this court held that where an annuity springs alone from a will, there is no distinction between the terms ''legacy'' and ''annuity.''

In *Perkins* v. *Bank,* 81 Miss. 361, 33 So. 18, this court held: ''If it is clear, either by express provision or necessary implication, that the legacy is to be paid *at all events,* and that is what the testator intended, that is the end of the matter, and the legacy is to be charged upon the lands.''

The ultimate takers of the fee have only the remainder after the satisfaction of previous dispositions. *Knotts* v. *Bailey,* 54 Miss. 238, 28 Am. Rep. 348.

As to the arrears, in such case, the rule is stated as follows: ''Where it clearly appears that the annuity is charged upon the *corpus,* the *corpus,* as a matter of course, will be liable for the payment of the arrears, and where an annuity is, by will, expressly charged on the *corpus* of an estate, subsequent words tending to show that the testator contemplated that it should abate in the event of the income of the property being insufficient, do not deprive the annuitant of the right to have the *corpus* applied toward making good any deficiency of income to meet the annuity. If the income of the whole estate is charged with the payment of an annuity, and the capital fund is limited over 'after payment' or 'subject to' the payment of the annuity, the *corpus* will be liable for the payment of arrears. If there is a simple gift of an an-

nuity, with no indication of an intention that it shall be paid out of income, rather than *corpus,* or if the annuity is made an unlimited and indefinite charge upon rents and profits, resort may be had to the *corpus,* in case the income is insufficient.'' 3 C. J., section 29, p. 212.

Limiting this decision to the questions presented, we are of the opinion that the testator intended, at all events, to care for and maintain the annuitants in comfort, and that the gift being an indefinite and an unlimited charge on rents, issues, profits, and income, resort may be had to the *corpus* of this estate, the income being insufficient; and that, as presented here, the arrears of annuity may be charged upon the *corpus* of this trust estate.

We think the chancellor also correctly allowed interest thereon as it was a matter within his sound discretion, which does not appear to have been abused by the decree here under review. 3 C. J., 211, section 26, and note.

*Affirmed.*