HART *v.* FIRST NATIONAL BANK OF JACKSON

No. 40826 June 2, 1958 103 So. 2d 406

*Floyd, Cameron & Deen,* Meridian, for appellant.

*Ricketts* & *Weston; Wells, Thomas* & *Wells,* Jackson, for appellees.

Holmes, J.

This appeal presents for construction and interpretation a certain instrument of writing dated August 2, 1917, executed by Ben Hart and his wife, Mrs. Ida Hart, creating a trust for the benefit of their son, Dr. Leonard Hart,

upon certain terms and conditions therein stated, and designated as Leonard Hart Trust No. 2.

The litigation originated in the Chancery Court of the First Judicial District of Hinds County upon a petition filed by First National Bank of Jackson, the successor trustee in said instrument, praying for authority to sell certain real property in which the trust estate owned an interest. On July 24, 1917, an instrument identical in its terms and provisions with the said instrument designated as Leonard Hart Trust No. 2, except as to the property therein described, was executed by Ben Hart and his wife, Mrs. Ida Hart, and is designated in the record as Leonard Hart Trust No. 1. In both of said instruments it was provided that upon the death of Leonard Hart, his wife, Lulu Hart, during her widowhood, should be paid the sum of $150.00 per month, payable quarterly, "out of the net income of said property". Dr. Leonard Hart died in 1937. During the nineteen-year period since his death the income from the trust property in Leonard Hart Trust No. 1 has been sufficient to meet the payments of $150.00 per month to Lulu Hart, the widow of Leonard Hart. Under this trust No. 1, Mrs. Hart has therefore received a total sum of $34,-200.00. During the same period, the income from the trust property in the Leonard Hart No. 2 has been insufficient to meet the payments of $150.00 per month to Mrs. Hart, and has yielded to her only an average of $887.77 per year, or a total of $15,943.91. Thus Mrs. Hart has received during the nineteen-year period from both trust No. 1 and trust No. 2 the total sum of $50,-143. 91. During the nineteen-year period, Mrs. Hart has accordingly received all of the income from the Leonard Hart Trust No. 2 and has accepted the same without protest until now, even though the same was insufficient to the amount of $18,256.09 to meet the payments of $150.00 per month in the Leonard Hart Trust No. 2.

The Leonard Hart Trust No. 1 is not here involved. There is only involved the question of the deficiency in

the payments to Mrs. Hart under the Leonard Hart Trust No. 2.

There was named as defendants to the aforesaid petition the income beneficiary, Mrs. Lulu Hart, and the remaindermen under the trust instrument. All parties approved the sale of the property as prayed for in the petition and joined in the prayer therefor. Mrs. Lulu Hart made her answer a cross-bill and prayed that the trustee in the Leonard Hart Trust No. 2 be directed to pay her from the corpus of the trust estate the deficiency in the monthly payments provided for in the trust instrument. The trust instrument, in its pertinent provisions, provided as follows:

(1) "In consideration of $1.00 and other valuable considerations, the receipt whereof is hereby acknowledged, we, Ben Hart and Mrs. Ida Hart, adult residents of Jackson, Hinds County, Mississippi, convey and sell to Mrs. Minnie Hart Dreyfus, Joseph Hart, and Saul Cyril Hart, as trustee for Leonard Hart, subject to the conditions, provisions and limitations hereinafter stated, the following described property, towit:" (Here follows a description of the property.)

(2) The trustees, who were the sister and brothers of Dr. Leonard Hart, were given the right and authority to lease, sell, barter, exchange, mortgage, encumber, improve, repair, invest and reinvest and generally manage the property or the proceeds thereof, and it was further provided that in the event the trustees should sell, barter, or exchange said property, or any part thereof, the trustees should be under the same duty with respect to the proceeds and that the proceeds should stand in lieu of the property sold. It was further provided, however, that the right of sale, etc., was conferred upon said trustees subject to the written consent of the said Leonard Hart.

(3) The instrument contained the further provision: "At the death of Leonard Hart if he shall be survived

by his present wife, Lulu Hart, the said trustees shall, during her widowhood, pay her out of the net income of said property $150.00 per month, payable quarterly. Upon the death or marriage of the said Lulu Hart the said trustees shall convey said property then remaining in their hands to the lawful issue of the said Leonard Hart; and if he leaves no issue of his own body, then, in such event, to the heirs at law of the grantors herein, said heirship to be determined as of the death of the grantor last dying.''

(4) It was further provided that ''the said trustees shall have the right, power and authority at anytime they may see fit to convey, transfer, and deliver said property still remaining in their hands, or any part thereof, or the proceeds or income thereof, or any part thereof, to the said Leonard Hart absolutely and without condition, in which event this trust shall terminate.''

(5) It was further provided that during the existence of the trust ''the said trustees shall pay and deliver to the said Leonard Hart quarterly the net income derived from the property herein conveyed, or the proceeds thereof; but no part thereof shall be liable for any debt or obligation owing by him.''

The question here presented is whether or not the provision in the trust instrument directing the trustees to pay to Mrs. Lulu Hart ''out of the net income of said property'' $150.00 per month, payable quarterly, created for Mrs. Hart an annuity payable in any event and without contingency and whether or not she is entitled to have the corpus of the estate invaded for the purpose of meeting the deficiency in the monthly payments directed in the trust instrument.

In determining this question, consideration must be given to the instrument as a whole and effect must be given to the plain and unambiguous language therein used. It is generally recognized that general rules of construction of written instruments apply to the con-

struction of trust instruments whether they are contracts, deeds, or wills. 54 Am. Jur., Trusts, Sec. 17. ■■ The prime inquiry in the construction of a will or trust instrument is the intention of the testator or the trustor, and in ascertaining this intent, effect must be given to the plain and unambiguous language used in the instrument. In Re Vail's Will, 87 So. 2d 68. ■■ It is also a well recognized rule of construction that in ascertaining the intention of the testator or trustor, consideration must be given by the Court to the entire instrument and the instrument considered as a whole. Cross, et al v. O'Cavanagh, et al, 198 Miss. 137, 21 So. 2d 473. ■■ It is further a well recognized rule of construction that doubtful provisions will be construed favorably to the next of kin as against those of more remote kinship of the testatrix or trustor. Cross, et al v. O'Cavanagh, et al, supra.

In 54 Am. Jur., Trusts, Sec. 17, it is said: "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills. The cardinal rule of construction is, of course, to determine the intention of the settlor, where the creation of the trust is a unilateral matter, and to determine the intention of the parties, where such creation is a bilateral matter. Due weight must be given to all words used by the trustor in determining his intention. The object of construing an instrument creating a trust is to ascertain the intent and purpose of the settlor, and to effectuate that purpose insofar as it is consistent with the rules of law.

"In the case of a trust based on a written instrument, the intention of the trustor is to be ascertained from the language thereof, and the court may not go outside the language in an effort to give effect to what it conceives to have been the actual intent or motive of the trustor. If the language is unambiguous and perfectly clear, there is no field for the play of construction; if the trustor has

clearly expressed one intention, the court cannot impute to him another, and parol evidence is inadmissible to add, take away from, or even to explain such clear expression of intention. . . . .''

Counsel on both sides have been unusually diligent in their research of and in correlating the decisions of the courts of other jurisdictions. These decisions have been governed by the provisions of the instrument in each instance and the particular facts and circumstances of the particular case. The result has been that there are many decisions holding that where the instrument directs the payment of a designated sum to a beneficiary out of the income of the trust estate and the income proves insufficient to meet the payments, resort may be had to the corpus of the estate to make up the deficiency, and there are many decisions to the contrary. An examination of these cases, however, will show that the court's decision in each instance has been governed by the provisions of the instrument and the facts and circumstances in the particular case.

 Counsel resort to the decisions of the courts of other jurisdictions because they say that no applicable Mississippi case has been decided. We think, however, that counsel on both sides have overlooked the case of Brickell v. Powell, 148 Miss. 491, 114 So. 328, which definitely announces the rule applicable to the case at bar. In the Brickell case, the Court said: ''We understand appellant and appellees to agree to the following fundamental rule of law which controls us in construing the will; but whether they so agree or not, it is correct, and is our polestar in this case. *A direction to pay an annuity out of rents and profits of land charges only such rents and profits, and not the corpus of the estate, unless a contrary intention appears, and can only be enforced against the trustee personally insofar as he has received such rents and profits.''* (Emphasis ours)

Thus in this case, the Court has definitely laid down the rule which is to be our polestar in the decision of

the case before us. It is held unequivocably that a direction to pay an annuity out of rents and profits of lands charges only such rents and profits and not the corpus of the estate unless a contrary intention appears. In the light of this decision we need not go beyond our own jurisdiction in seeking a solution of the question presented on this appeal. The task which devolves upon us in the determination of this case is that of determining whether or not the trustors in the instrument here involved intended that the monthly payments provided for Mrs. Hart are such that the corpus of the trust estate can be invaded to make up the deficiency in the monthly payments.

It is true that in the Brickell case the Court held that the annuities were a charge upon the corpus, but that decision was based upon the terms and provisions of the will and the relationship and circumstances of the parties in that particular case. Applying the rule announced in the Brickell case to the case at bar, the conclusion is inescapable to us that the monthly payments directed to be made to Mrs. Hart do not constitute a charge upon the corpus of the trust estate. There is nothing in the instrument itself from which it can be gleaned that it was the intention of the trustors to charge the corpus of the trust estate with the monthly payments provided for Mrs. Hart.

It is argued by the appellant that the provision in the instrument that upon the death or remarriage of Mrs. Hart the trust estate then remaining in the hands of the trustees shall vest in certain named remaindermen shows an intention on the part of the trustors to have the corpus invaded for the purpose of meeting the payments. The emphasis is placed by the appellant on the language "the property then remaining" in the hands of the trustees shall go to the lawful issue of the said Leonard Hart, and if he leaves no issue of his body, then to the heirs at law of the grantors, said heirship to be deter-

mined as of the death of the grantor last dying. We think this language of the trust instrument is clearly explained and accounted for by the provision in the trust instrument that the trustees shall have the right and authority at anytime they see fit to convey and transfer all or any part of the trust property to Leonard Hart, in which event the trust shall terminate. Of course, if the trustees should transfer any part of the property to Leonard Hart, then upon the death or marriage of the said Lulu Hart there would remain in the hands of the trustees only such part thereof as had not been by the trustees transferred or conveyed to Leonard Hart. We see nothing, therefore, in this provision of the trust instrument which indicates an intention on the part of the trustors to charge the corpus of the estate with the payments directed to be made to Mrs. Hart. As a matter of fact, the provision in the trust instrument giving the trustees the right at anytime to convey all or any part of the trust property to Leonard Hart and to thereupon terminate the trust clearly shows that it was not the intention of the trustors that the payments to Mrs. Hart should become a charge on the corpus of the estate.

It is further argued by the appellant that the instrument shows a clear intent on the part of the trustors to provide maintenance and support for Mrs. Hart. We find nothing in the trust instrument or in the record that justifies this contention. There is nothing in the record to show that the payments directed to be made to Mrs. Hart were necessary for her support, or that she was in any manner in need or necessitous circumstances.

██ We think that it is further of significance that the remaindermen in the instrument are heirs at law of the trustors, that is to say, they are blood kin. It is more reasonable to conclude that the trustors were more concerned about preserving the estate for their blood kin than for one merely related by marriage as was the status of Mrs. Hart. The blood kin of the trustors are the

natural objects of their bounty, and if any doubt arises as to what the intention of the trustors was, then this doubt must be resolved in favor of the next of kin. ''Doubtful provisions will be construed favorably to the next of kin as against those of more remote kinship of the testatrix.'' Cross v. O'Cavanagh, supra.

We think, however, that the rule laid down in the case of Brickell v. Powell, supra, is controlling in this case. A comparison of the terms of the trust instrument in the Brickell case with the terms of the trust instrument in the case at bar, and a comparison or analysis of the facts in the respective cases, leads us to the conclusion that the payments provided in the trust instrument for Mrs. Hart were not intended by the trustors to be a charge upon the corpus of the trust estate.

We mention some of the pertinent provisions of the will in the Brickell case. The Court said in the outset that it could not be gainsaid that the dominant thought of the testator was to provide for the maintenance and support in comfort of the annuities. Such could not be said of the trustors in the case at bar.

The Court further said that the son, John F. Powell, was the natural object of his father's affection and bounty. The Court pointed out that the will provides that the estate be held in trust for the use of the testator's son, John F. Powell, and his wife, Virginia Powell, during their natural lives.

The will directed that out of the rents and profits of said trust property the trustee, or his successor, should pay to John F. and Virginia Powell during their natural lives jointly the sum of $2,000 per annum, and in the event of the death of either, to the survivor.

The will left to John F. and Virginia Powell the house and lot in Yazoo City occupied by the testator as a residence. The will also provided that John F. and Virginia Powell were given the right to select as their home any of the plantations free from rent; the title, however,

vested in the trustee. The will further provided that the income was not to be anticipated by John F. and Virginia Powell nor be liable for their debts.

Significantly, the will then provided that the trustee should have the power to increase the annuity if from ill health or other unforeseen cause in the opinion of the trustee it should become expedient and proper. The Court said, after quoting these provisions, the following:

"It is apparent from the terms of the will that the testator had in mind the maintenance and support in comfort of his son, John F. Powell, and daughter-in-law, Virginia."

The Court further said: "At all events, he evidently intended this trust estate to be devoted primarily for the use of the annuitants, otherwise he would not have vested the trustee with the broad, sweeping power to substitute his judgment for that of his own. *This grant of power shows that he did not intend to relieve the corpus of his estate."* (Emphasis ours)

The Court then held that the payments directed to be made to John F. and Virginia Powell were a charge upon the corpus. No such provisions as led the Court to its decision in the Brickell case are present in the case before us. There is nothing in the case before us either in the facts or in the terms and provisions of the trust instrument to show an intention on the part of the trustors to subject the corpus of the trust estate to the payments provided for Mrs. Hart. In this state of facts, the general rule announced in the Brickell case becomes applicable and controlling here, namely, that a direction to pay an annuity out of rents and profits from lands charges only such rents and profits and not the corpus of the estate, unless a contrary intention appears.

It is significant that the trustors did not expressly provide in the trust instrument that the payments directed to be made to Mrs. Lulu Hart should be a charge upon the corpus of the trust estate. It could have been easily

done in appropriate language. The fact that they did not do so indicates that it was not their intention to so charge the corpus of the estate.

After a careful consideration of the question involved, we are of the opinion that under the authority of the case of Brickell v. Powell, supra, and in view of the provisions of the particular trust instrument here involved, and the relationship and circumstances of the parties, the chancellor was correct in holding that the payments provided for Mrs. Hart were not a charge upon the corpus of the estate, and in denying the prayer of the cross-bill, and dismissing the same. The decree of the court below is accordingly affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.