RODGERS, Justice:
This case involves the interpretation of a will, particularly as to whether or not the trustees named in the will can invade the corpus of the estate for the purpose of paying certain annuities specified in the will.
From the record on appeal in this case it appears that Charles F. Engle wrote a holographic will on October 1st, 1953. He wrote a codicil to this will on October 10th, 1953, and a second codicil on January 26th, 1955. A synopsis of the will is essential to establish a clear picture of the problem.
Engle’s wife was given all his property for life, the remainder at her death was to revert to Engle’s estate in trust. The trustees of this trust were to assume their duties upon Mrs. Engle’s death. Said trustees were (1) W. A. Geisenberger (Geisen-berger’s appointment was revoked, by codicil, and William Falkenheiner was appointed in Geisenberger’s place); (2) John Green; and (3) Bob Netterville.
The trustees were directed to dispose of that property which reverted to Engle’s estate upon the death of Mrs. Engle, as follows: The following persons were to receive a monthly payment, for life, being (1) Eloise Falkenheiner — $300; (2) Marie Kiernan — $150; (3) Alma Alexander'— $150; (4) Nona Louise Valdes — $200, and at her death, to her children then living during their lives; (5) Anna Laura Hager —$100; (6) Mandy Ahart — $50; (7) Minerva Lewis — $50. The said above-mentioned monthly payments were termed in the litigation in issue “annuities”; thus the beneficiaries of these annuities are called “annuitants.”
The trustees were then directed, after providing for the payment of the above-mentioned annuities, to sell all the real property of the testator and to dispose of the proceeds as follows: (1) 14 th to the Bishop of the Catholic Diocese of Natchez; (2) i/sth to St. Stanislas College at Bay St. Louis; (3) $5,000 to Prentiss N & I Institute at Prentiss, Miss.; (4) $10,000 for the purchase of tombstones for the ■graves of Engle, his parents, his wife, and his wife’s family, should this not be done during Mrs. Engle’s lifetime; (5) $3,000 to Sidney Warren and his wife for the benefit of their children.
After having provided for the above-named annuitants, and for the above-named legatees, the trustees were directed to dispose of the remainder of the estate as follows: (1) '14tb to the next of kin through *727 Engle’s cousin, John Kiernan, taking per stirpes; (2) ,14th to the three orphan asylums in Natchez, share and share alike; (3) .14th to Carl and Peggy Hoppe; (4). '14th to the children of Walter and Anna Coleman.
The testator, Engle, also made several statements throughout his will and codicils which, it is argued in briefs for both the appellants and appellees, shed some light on the intent of Engle. At one point he stated that the “trustees may exercise their judgment about selling or holding revenue property.” At another point he stated that “the monthly payments set out are preferred bequests, and trustees may decide that revenues from real estate are needed to take care of said bequests and instead of selling real estate may hold same and distribute any surplus revenues to devisees annually.” And finally, at another point, Engle stated that “in event of disagreement as to construction hereof, the decision of said trustees shall control.”
Engle died in June, 1955. Mrs. Engle, thus holding a life estate in the property left by Mr. Engle, lived nearly 12 years after Mr. Engle’s death. During this period Mrs. Engle executed several mineral leases on property which she held under the terms of Mr. Engle’s will.
When Mrs. Engle died on April 12, 1967, the estate which Mr. Engle left to Mrs. Engle for life reverted to Mr. Engle’s estate in trust, and the heretofore-named trustees assumed their duties. For a period of approximately 10 months (April 12, 1967 — February 14, 1968) subsequent to the death of Mrs, Engle, the trustees kept financial records of the trust showing the total receipts and disbursements thereof. Pursuant to the information acquired through these records, the trustees filed a “Petition to Authorize Payment of Monthly Income to Beneficiaries.” In this petition the trustees averred that while the total annuities amounted to $11,400 per year, income would amount to only approximately $10,500 per year. Concluding in their petition that income would be insufficient to pay the annuities, the trustees asked the chancery court for permission to invade the principal to pay the annuitants, and also to borrow against the principal to pay the annuitants.
The trustees averred that the testator’s intent was that all the gross receipts from royalty and similar oil interests be paid to the annuitants. On the other hand, they point out that the Uniform Principal and Income Act (Section 672-151 et seq. Miss. Code 1942 Ann. (1966) calls for royalty to be allocated, 27¡54 per cent of gross receipts to principal as a depletion allowance, and the balance allocated to income. They conclude that there is a conflict between the trustees’ interpretation of the testator’s intent on this issue, and the dictates of the Uniform Principal and Income Act, the trustees therefore asked the chancery court to resolve this conflict.
In their answer, the appellants denied the right of the annuitants to receive anything other than income from real estate; that is to say, the corpus of the real estate is not charged by the will with the payment of the monthly amounts. Appellants also denied the right of the annuitants to receive any oil royalties from any leases which were executed after the death of the testator, although payments may be made to the annuitants from oil royalties and other such income derived from leases éxe-. cuted by the testator himself. Appellants aver that all royalties or income from any leases executed after the death of the testator must be paid into the corpus of the trust, and that the annuitants are then entitled only to the income derived from the investment of such corpus. It is also said, with regard to the Uniform Principal and Income Act, that since the act was passed in 1966 it cannot affect appellants’ remainder interests which vested in 1953.
Subsequently, appellants filed a supplementary petition asking the chancery court to adjudicate the quantum of estate held by Mrs. Engle under the will of Mr. Engle, concluding that a determination of the issues raised would be premature unless there *728 is an initial determination of the quantum of estate of Mrs. Engle. The trustees filed a motion to strike the supplementary petition of appellants, contending primarily that the quantum of estate of Mrs. Engle had heretofore been determined by decree of the chancery court dated November 8, 1967, said decree approving final accounting and discharging Mrs. Engle as executrix of Mr. Engle’s will.
In his decree the Chancellor held (1) that Mrs. Engle, having only a life estate, was without authority to execute oil and gas leases after Mr. Engle’s death. This is so even though she was also executrix of the estate, an executrix having the power to lease lands of the decedent’s estate only when it is expressly given in the will. However, it is said that authority to execute leases did exist in the trustees, since such authority was implied by those provisions of Mr. Engle’s will authorizing the trustees to invade the corpus of the estate. In other words, since oil and gas royalties are part of the corpus of an estate, authority to invade the corpus by executing mineral leases may be implied. (2) The Chancellor also held that the will as a whole indicates that it was the intent of the testator that the monthly annuity payments should be made in all events, even if this meant that the corpus of the trust must be invaded.
Appellants appealed from the decree of the chancery court and contend that (1) the court’s construction of the will regarding the invasion of the corpus of the trust was erroneous', and (2) the court’s .authorizing the trustees to pay the annuities from mineral leases executed by Mrs. Engle or by the trustees after Mrs. Engle’s death was an error.
Appellees, in their brief, answered directly the first argument of the appellants. However, appellees contend that the second argument of appellants (concerning execution of mineral leases by Mrs. Engle or the trustees after Mrs. Engle’s death) should not be adjudicated by the Supreme Court due to procedural defects in appellants’ pleadings.
I.
The first issue to be determined is: Should invasion of the corpus of the trust be allowed?
Appellants contend that the testator had no prime objective with regard to the annuitants. Rather the testator’s only prime concern was to provide for his wife for the remainder of her life. In other words, after providing for his wife, the testator neither expressed nor implied any preference for the well-being of the annuitants as opposed to the well-being of the other dev-isees and legatees.
On the other hand, appellees contend that the language of the will indicates a desire by the testator for a preference in favor of the annuitants over the remaining dev-isees and legatees. Appellants also argue that since the testator directed the annuities to be paid out of his “estate,” the use of the word “estate” implies that the income and corpus should be applied for the benefit of the annuitants. It is said, the term “estate” is used in the will to signify all the property of every kind that the testator left at his death.
It is stated in 4 Am.Jur.2d Annuities, section 18, page 420 (1962), that the right of an annuitant under a will or trust to have a deficiency in income made good out of the corpus depends upon the “intention” of the testator, said intention to be gathered from the provisions of the instrument and the testator’s relations to the objects of his bounty. The “intention” of the testator is thus recognized as the guiding rule in determining this issue. 2 Scott, the Law of Trust, § 128.7, page 1031 (1967); Annotation 109 A.L.R. 717, 718 (1937) ; Hart v. First National Bank of Jackson, 233 Miss. 766, 103 So.2d 406 (1958).
Although the general rule in this country seems to be that an annuity in a will *729 is payable out of the principal unless a contrary intention appears (see 5 Page on Wills, section 39.18, page 94 [1962]), this Court has apparently not spoken out directly on this point. In Brickell v. Powell, 148 Miss. 491, 114 So. 328 (1927), the court stated that “a direction to pay an annuity out of rents and profits of. lands charges only such rents and profits, and not the corpus of the estate, unless a contrary intention appears * * However, the testator in the case at bar directed that the annuities be paid out of his “estate.” Thus the language directing the annuities to be paid in the case at bar (out of the estate) and the language directing the annuities to be paid in the Brickell case (out of rents and profits of lands), is distinguishable.
In apparently the only other Mississippi case on this point, Hart v. First National Bank of Jackson, 233 Miss. 766, 103 So.2d 406 (1958) the language of the trust directing payment of the annuities in question was similar to the language used in the Brickell case. In the Hart case, supra, the annuities directed to be paid “out of the net income of said property.” Again, this language is significantly different from the language in the case at bar, which directs that the annuities be paid out of the “estate” of the testator. Thus, in the two Mississippi cases in point, Brickell, supra, and Hart, supra, the language confines payment of the annuities to the income, while the language in the case at bar appears to be more broad. See 5 Page on Wills, § 39.18, p. 94 (1962).
Upon an examination of the will itself, it is first noted that the testator directed that all the annuitants be paid a sum certain. Immediately following the annuity provisions of the will, the testator uses the following significant clause: “after provision is made for the payment of the above bequests * * * ” It is apparent that this language was intended to provide first for the annuitants, and thereafter the residue of the original fund was to be disposed of to the named lagatees other than the annuitants.
It is stated in 4 Am.Jur.2d Annuities, section 19, page 424 (1962), that where the language implies a gift more than the trust corpus, after provision for a payment of an annuity, that such language has been held to indicate an intention to charge the principal with any deficiency of income.
In the California case of In re Luckel’s Estate, 151 Cal.App.2d 481, 312 P.2d 24, 66 A.L.R.2d 846 (1957), an annuity was held to have preference over a legacy. The court pointed out that as a general rule a legacy supported by a.valuable consideration is entitled to preference, unless the will expresses a different intention, and the California court concluded that the will did express a different intention:
“Construing the will in its entirety it indicates an intention that the annuity shall have preference over the legacy to Mary Roberts. The widow was uppermost in the testator’s mind. She was the first object of his bounty. The bequests and devises to her and the annuity are the first provisions of the will. The annuity is charged on all property of the estate. The legacy to Mary Roberts is not charged on any specific property. The testator’s intention seems to have been that the annuity should be paid irrespective of the sufficiency of assets to pay the other legacies.”
From the reasoning in the Luckel case, it appears that the will in the case at bar would indicate an intention that the annuity would have preference over the other legacies. The annuity provisions, as in the Luckel case, came before the provisions to the other legatees. Moreover, the testator seemed to require a preference in favor of the annuitants when he stated that “after provision is made for the payment of the above bequests, out of my estate * * * ”, this indicates that the other legatees were to be taken care of only after the annuitants.
*730 On p. 2 of his will, the testator stated that “the monthly payments set out are preferred bequests * * * ”, adding weight to the proposition that the annuitants were to be provided for before the remaining legatees named in this will.
In the Mississippi case of Brickell v. Powell, 148 Miss. 491, 114 So. 328 (1927), the question was whether or not the will should be construed to fix a charge on the corpus of the estate for an annuity. The court examined the will in its entirety and held that the annuity must be paid even to the extent of invading the corpus of the estate:
“The directions in this will as to this trust are consonant with, and reflect a good business man’s desires and instructions, and do not reflect the view that, in an iron clad way, he desired to hamper and restrict his son, and his son’s wife to less than a life of ease and comfort. * * *
“At all events, he evidently intended this trust estate to be devoted primarily for the use of the annuitants, otherwise he would not have invested the trustee with the broad, sweeping power to substitute his judgment for that of his own. This grant of power shows that he did not intend to relieve the corpus of his estate.
“The mere use of the words, ‘out of the rents, issues, profits, and income,’ does not show, at all, that he intended to relieve the corpus of the estate from the onus of a support and maintenance for these annuitants, but, to the contrary.”
In the Hart case, 233 Miss. 766, 103 So.2d 406 (1958), this Court considered the intention of the trust in question, and held that the corpus of the trust was not to be invaded to pay an annuity. The court in the Hart case carefully distinguished the instrument from the instrument in the Brick-ell case, supra. The court also found significant the fact that the remaindermen in the Hart case were heirs at law of the trustors, stating that it was reasonable to conclude that the trustors were concerned about preserving the estate for the blood kin, more so than for one (the annuitant) merely related by marriage.
We are of the opinion that the Brickell case and the Hart case are not controlling in the issue in the case at bar. The relationships of the parties are significantly different in all three cases, as are there significant differences in the language of the instruments in each case. In a case dealing with an issue such as one in the case at bar, the court’s decision in each instance has been governed by the provisions of the instrument and the facts and circumstances in the particular case. We are of the opinion, therefore, that after considering the will in the case at bar as a whole, that the corpus of the trust can be invaded for the benefit of the annuitants, and that the annuitants have preference over the corpus of the trust, since the income is insufficient to pay the said annuities.
II.
The second question is: Should the annuitants be paid any of the proceeds from mineral leases executed by the life tenant (Mrs. Engle) after the death of the testator ?
Appellants are not clear in their argument on this contention. It appears that the thrust of their reasoning seems to be that (1) a life tenant is without right to execute mineral leases and dispose of the royalties thereon; to do so constitutes waste in the absence of the consent of the remaindermen; (2) since royalties represent corpus, only the interest on the corpus should be paid to the life tenant; (3) the annuitants have no greater rights to the oil royalties than the life tenant herself; and (4) therefore the annuitants could only be entitled to the income or interest derived from an investment of said royalties.
It is clear from the case of Martin v. Eslick, 229 Miss. 234, 90 So.2d 635, *731 92 So.2d 244 (1956), that a life tenant who executes oil leases subsequent to the death of the grantor of the life estate is entitled only to the interest derived from any investment of the royalty gained from such lease. On the other hand appellant fails in his argument that the annuitants can only be entitled to those rights of the original life tenant. The interests of the annuitants are obviously not governed by the interests granted to the life tenants by the testator in his will. Rather the interests of the annuitants are governed by those terms of the testator’s will dealing with the annuitants themselves. In other words the will in the case at bar created a life estate in the wife, granting to her certain rights and privileges; at the same time the will created the annuities in question, granting to the annuitants other rights and privileges. Again, the rights and privileges of the life tenant cannot be imputed h} the annuitants. It follows, therefore, that the fact that the life tenant is restricted to only the interest of the corpus of the mineral royalties in no way restricts the annuitants to only the interest on the mineral royalties. This is true because if the annuitants are entitled to any portion of the corpus of the trust created by the will, they are also entitled to “estate” created by the royalties from the mineral leases.
The rights of the life tenant do not. govern the rights of the annuitants; their rights as expressed in the will are to be carved out of the estate without regard to the source.
We are of the opinion, therefore, that the Chancellor was correct in his interpretation of the will. We hold that under the terms of the will, the trustees may invade the corpus of the estate to pay the preferred annuities enumerated in the will.
The decree of the chancery court is therefore affirmed.
Affirmed.
GILLESPIE, P. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.