KITCHENS, JUSTICE,
Concurring in part and in result:
¶ 53. I agree with the result reached by the majority, but write separately to address the majority’s application of the law of waste. The law of waste allows a re-mainderman to recover the value of timber harvested by a life tenant if the timber was harvested solely for the life tenant’s own profit. Chapman v. Thornhill, 802 So.2d 149, 154-55 (Miss.Ct.App.2001) (quoting Learned, v. Ogden, 80 Miss. 769, *607 779, 32 So. 278, 279 (1902)). However, under the circumstances of the present case, the law of waste does not apply. The life tenant here was Emogene Baumgard-ner, but she could not profit from the sale without Ready’s consent, and she did not make the decision to harvest the timber.[8] The real issue is whether the trustee properly allocated the timber proceeds.
¶ 54. “[I]t is well known that a trust must be administered according to the intent of the settlor.” Gulf Nat’l. Bank v. Sturtevant, 511 So.2d 936, 937 (Miss.1987) (citing D’Evereaux Hall Orphan Asylum v. Green, 226 So.2d 725 (Miss.1969); Reedy v. Johnson’s Estate, 200 Miss. 205, 26 So.2d 685 (1946)). The majority correctly finds that Harold intended for all of the home-place real estate, including the timber, to pass to his children at Emogene’s death. Because Ready took the position that all of the timber proceeds should go to the five named charities, his allocation of funds runs contrary to Harold’s intent, and the chancellor erred by approving his distribution.
¶ 55. I also note that, if the doctrine of waste were applicable, any discussion would have to include the chancellor’s finding that some of the timber was infested with insects. The majority briefly mentions the infestation in its recitation of the facts, but does not reference that finding anywhere in its waste analysis. The chancellor’s order found that “some of the timber assets [of the trusts are] presently subject to insect infestation,” and that “prudent management of the said Trust assets dictates that the said timber be promptly sold in a commercially reasonable manner to preserve the capital value of each Trust.” (Emphasis added.) Harvesting “bug timber” would prevent or mitigate waste; but without the forester’s report, and without clearer language from the chancellor, we cannot know how much the chancellor found to be infested. Ar-rington alleges that the timber was clear-cut, but an infestation of only some of the timber might not require a elearcutting. Based on the limited record before us, a waste analysis is not possible.
¶ 56. In this case, our focus is not on a question of waste but, rather, on the trustee’s apportionment of proceeds. Because Harold intended for the timber on the home place to pass to his children at Emo-gene’s death, the chancellor erred in approving the trustee’s distribution of the timber proceeds. For these reasons, I respectfully concur in part and in result.
KING, J., JOINS THIS OPINION.

. According to the chancellor’s order, Emo-gene’s guardian ad litem, who also served as the conservator of her estate, agreed to the court-ordered sale on her behalf.